1

2

3

4

5

6

7

8                        UNITED STATES DISTRICT COURT

9                    FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   DWAYNE S. MONTGOMERY,                    No.  2: 22-cv-1156 KJN P

12                  Plaintiff,

13        v.                                  ORDER

14   M. CULUM, et al.,

15                  Defendants.

16

17          Plaintiff is a state prisoner, proceeding without counsel.  Plaintiff seeks relief pursuant to

18   42 U.S.C. § 1983, and requested leave to proceed in forma pauperis pursuant to 28 U.S.C. § 1915.

19   This proceeding was referred to this court pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 302.

20          Plaintiff submitted a declaration that makes the showing required by 28 U.S.C. § 1915(a).

21   Accordingly, the request to proceed in forma pauperis is granted.

22          Plaintiff is required to pay the statutory filing fee of $350.00 for this action. 28 U.S.C.

23   §§ 1914(a), 1915(b)(1).  By this order, plaintiff will be assessed an initial partial filing fee in

24   accordance with the provisions of 28 U.S.C. § 1915(b)(1). By separate order, the court will direct

25   the appropriate agency to collect the initial partial filing fee from plaintiff's trust account and

26   forward it to the Clerk of the Court.  Thereafter, plaintiff will be obligated to make monthly

27   payments of twenty percent of the preceding month's income credited to plaintiff's prison trust

28   account.  These payments will be forwarded by the appropriate agency to the Clerk of the Court

each time the amount in plaintiff's account exceeds $10.00, until the filing fee is paid in full.  28 U.S.C. § 1915(b)(2).

The court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity.  28 U.S.C. § 1915A(a).  The court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915A(b)(1), (2).

A claim is legally frivolous when it lacks an arguable basis either in law or in fact.  Neitzke v. Williams, 490 U.S. 319, 325 (1989); Franklin v. Murphy, 745 F.2d 1221, 1227-28 (9th Cir. 1984).  The court may, therefore, dismiss a claim as frivolous when it is based on an indisputably meritless legal theory or where the factual contentions are clearly baseless.  Neitzke, 490 U.S. at 327.  The critical inquiry is whether a constitutional claim, however inartfully pleaded, has an arguable legal and factual basis.  See Jackson v. Arizona, 885 F.2d 639, 640 (9th Cir. 1989), superseded by statute as stated in Lopez v. Smith, 203 F.3d 1122, 1130-31 (9th Cir. 2000) ("[A] judge may dismiss [in forma pauperis] claims which are based on indisputably meritless legal theories or whose factual contentions are clearly baseless."); Franklin, 745 F.2d at 1227.

Rule 8(a)(2) of the Federal Rules of Civil Procedure "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)).  In order to survive dismissal for failure to state a claim, a complaint must contain more than "a formulaic recitation of the elements of a cause of action;" it must contain factual allegations sufficient "to raise a right to relief above the speculative level."  Id.  However, "[s]pecific facts are not necessary; the statement [of facts] need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  Erickson v. Pardus, 551 U.S. 89, 93 (2007) (quoting Bell Atlantic Corp., 550 U.S. at 555) (citations and internal quotations marks omitted).  In reviewing a complaint under this standard, the court must accept as true the allegations of the

2

1    complaint in question, id., and construe the pleading in the light most favorable to the plaintiff.

2    Scheuer v. Rhodes, 416 U.S. 232, 236 (1974), overruled on other grounds, Davis v. Scherer, 468

3    U.S. 183 (1984).

4        Named as defendants are M. Culum, G. Gamaz, M. Pesce, B. Kelly, S. Sergent, S.

5    Hurtado, C. Mott, D. Clay, J. Quiring, H. Moseley, B. Holmes and P. Covello.  The undersigned

6    herein sets forth plaintiff's factual allegations and then addresses plaintiff's legal claims.[1]

7        *Factual Allegations*

8        Plaintiff alleges that on June 1, 2020, defendant Pesce illegally confiscated clothing items

9    belonging to plaintiff.  (ECF No. 1 at 15.)  When plaintiff asked for the return of his clothing

10   items, defendant Pesce responded, "You can't have it back, next time don't leave your shit on my

11   [dayroom] benches."  (Id.)  Plaintiff then asked defendant Pesce to issue plaintiff a property

12   confiscation receipt.  (Id.)  Defendant Pesce refused to issue the property confiscation receipt.

13   (Id.)

14       Plaintiff then asked to speak with the watch sergeant, defendant Clay.  (Id.)  Defendant

15   Pesce then ordered plaintiff to return to his cell.  (Id.)  Plaintiff refused to return to his cell and

16   said that he had a right to speak with his supervisor and that defendant Pesce could not deny

17   plaintiff his right to "ascertain redress to a grievance I'm having with a staff member."  (Id.)

18   Defendant Pesce again ordered plaintiff to return to his cell.  (Id.)  Plaintiff again refused to return

19   to his cell and voluntarily put his hands behind his back and submitted to handcuffs.  (Id.)

20   Plaintiff demanded to speak to the sergeant.  (Id. at 15-16.)

21       Defendant Pesce called for staff assistance on his radio based on a possible hostile

22   situation.  (Id. at 16.)  Defendants Kelly and Sergent responded to the call.  (Id.)  Defendant Kelly

23   approached plaintiff and ordered plaintiff to get up and "take it" to his cell.  (Id.)  Plaintiff refused

24   to comply with this command.  (Id.)  Defendant Kelly then reached down and tried to pick

25   plaintiff up.  (Id.)  Plaintiff crossed his legs, making it difficult for defendant Kelly to pick him

26   up.  (Id.)  Plaintiff said that he (plaintiff) had a right to talk to the sergeant.  (Id.)

27

28   [1]  Plaintiff's discussion of his legal claims contains further factual allegations.  The undersigned
     will set forth and address these further factual allegations in the discussion of the legal claims.

1    At that point, defendant Kelly said, "He spit on me…did you see that…he spit on me."

2    (Id.)  Defendant Kelly then took plaintiff by the left bicep and defendant Pesce took plaintiff's

3    right bicep.  (Id.)  Defendants started dragging plaintiff toward his cell.  (Id.)  Plaintiff swung his

4    legs beneath him to bring them to the front of his body.  (Id.)  Plaintiff placed his foot firmly on

5    the floor in front of him, causing both defendants Kelly and Pesce to stop abruptly.  (Id.)

6    Defendant Kelly attempted to yank plaintiff forward, causing defendant Pesce to fall forward.

7    (Id.)

8    Plaintiff felt defendant Kelly place his right hand onto plaintiff's shoulder and bring

9    plaintiff down more forcefully, causing plaintiff's head to slam into the floor.  (Id.)  Plaintiff was

10   then handcuffed behind his back.  (Id.)  Plaintiff was then handled "very aggressively" by

11   defendants Kelly and Pesce.  (Id.)  Defendant Kelly said, "Now it's a battery."  (Id.)  Defendant

12   Pesce responded, "Yes it is."  (Id.)

13   After defendant Sergent put ankle restraints on plaintiff, defendant Culum entered the

14   housing unit and took the chain from defendant Sergent's hand.  (Id. at 16-17.)  Defendant

15   Sergent crossed plaintiff's feet over one another.  (Id.)  Defendant Sergent then slammed his left

16   knee in the center of plaintiff's crossed feet and drove them into plaintiff's buttock as forcefully

17   as he could.  (Id.)  Defendant Sergent then took both of plaintiff's shoes from his feet and threw

18   them across the dayroom.  (Id.)

19   Defendant Clay then entered the housing unit and instructed defendants Culum and

20   Gamaz to escort plaintiff to the A facility program office.  (Id.)  Plaintiff was placed in a

21   wheelchair and escorted to the program office where he was put into a holding cage.  (Id.)

22   Defendant Gamaz removed the restraints from plaintiff's feet and hands.  (Id.)  Defendant

23   Culum ordered plaintiff to remove all of his clothes.  (Id.)  Plaintiff refused to remove his clothes.

24   (Id.)  The handcuffs were put back on plaintiff's wrists.  (Id.)

25   Defendant Gamaz then walked away to retrieve a pair of scissors.  (Id.)  Defendant Culum

26   stated, "If you give me any more problems, I'm gonna fuck you up nigger!"  (Id.)  Plaintiff

27   responded, "You ain't gonna do shit to me."  (Id.)  Defendant Culum then yanked plaintiff from

28   the holding cage, swung plaintiff 180 degrees and slammed plaintiff's face straight into a wall,

4

causing plaintiff to see stars.  (<u>Id.</u>)  Defendant Culum then smashed his left foot into plaintiff's right foot with all of his body weight, causing pain to shoot through plaintiff's body.  (<u>Id.</u>)  Defendant Culum then lifted plaintiff up off his feet, slammed plaintiff to the floor very hard, and brought his full body weight into plaintiff's back.  (<u>Id.</u>)  Defendant Culum then put his knee in plaintiff's back and struck plaintiff multiple times on the right side of plaintiff face with his fist.  (<u>Id.</u>)

Defendant Gamaz returned and joined in the assault.  (<u>Id.</u> at 18.)  Defendant Gamaz dropped her full body weight on plaintiff's back and began striking plaintiff in the left side of his back area.  (<u>Id.</u>)

After defendants Culum and Gamaz completed the assault on plaintiff, defendant Gamaz asked defendant Culum what happened.  (<u>Id.</u>)  Defendant Culum said that plaintiff attempted to strike him.  (<u>Id.</u>)  Defendant Gamaz reminded defendant Culum that plaintiff was still handcuffed.  (<u>Id.</u>)  Defendant Culum revised his statement to defendant Gamez and said that plaintiff used his shoulder to strike defendant Culum in the chest.  (<u>Id.</u>)

Plaintiff was then placed into administrative segregation ("ad seg") and issued two rules violation reports for two batteries on peace officers.  (<u>Id.</u>)  Both rules violation reports were fabricated and/or exaggerated by defendants.  (<u>Id.</u>)

*Retaliation Claim Against Defendant Pesce*

"Within the prison context, a viable claim of First Amendment retaliation entails five basic elements:  (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal."  <u>Rhodes v. Robinson</u>, 408 F.3d 559, 567–68 (9th Cir. 2005) (footnote and citations omitted).  To prevail on a retaliation claim, a plaintiff may "assert an injury no more tangible than a chilling effect on First Amendment rights."  <u>Brodheim v. Cry</u>, 584 F.3d 1262, 1269–70 (9th Cir. 2009).  Furthermore, "a plaintiff does not have to show that 'his speech was actually inhibited or suppressed,' but rather that the adverse action at issue 'would chill or silence a person of ordinary firmness from future First Amendment activities.'"  <u>Id.</u> at 1271 (citing

1   Rhodes, 408 F.3d at 568–69).

2          Plaintiff claims that defendant Pesce retaliated against plaintiff for asking for a property

3   receipt and a 602 form and for asking to see the sergeant.  (ECF No. 1 at 18-19.)  However,

4   plaintiff does not clearly allege defendant Pesce's adverse action.  For this reason, plaintiff's

5   retaliation claim is dismissed with leave to amend.

6          However, if plaintiff is claiming that defendant Pesce's adverse action was the order for

7   plaintiff to return to his cell, the undersigned finds that this order does not rise to the level of an

8   adverse action that would deter a prisoner of "ordinary firmness" from further First Amendment

9   activities.  See Johnson v. Feist, 2020 WL 2133007, at *8 (C.D. Cal. March 9, 2020) (order to

10  inmate to move while waiting for morning meal, speaking to him in a derogatory manner and

11  directing a correctional officer to instruct plaintiff to leave the main kitchen and return to his cell

12  not adverse actions) (citing Miller v. Sanchez, 2020 WL 528010, at *6 (C.D. Cal. Feb. 3, 2020)

13  (assignment to a job that conflicted with law library access for a single day is de minimus and

14  does not rise to the level of an adverse action that would deter a prisoner of "ordinary firmness"

15  from further First Amendment activities); Rodgers v. Martin, 2015 WL 1565359, at *7 (E.D. Cal.

16  Apr. 8, 2015) (denial of single meal "too de minimis to chill a person of ordinary firmness); Ruiz

17  v. CDCR, 2008 WL 1827637, at *4 (C.D. Cal. Apr. 22, 2008) (temporary loss of job, resulting in

18  lost pay and seniority, did not show that defendant's conduct had a chilling effect on First

19  Amendment rights)).

20         In Walker v. Villalobos, 2014 WL 658365 (C.D. Cal. Feb. 14, 2014), the plaintiff alleged

21  that after he tried to complain to the captain about the removal of single-cell status, the defendant

22  cuffed him and returned him to his cell to prevent him from reporting another defendant's threats

23  and to retaliate against him for his criminal offenses and staff complaints.  Id. at *2.  The

24  defendant pushed the plaintiff into his cell, causing plaintiff injury.  Id.  The court found that

25  plaintiff's claims that defendant prevented plaintiff from complaining, returned him to his cell

26  and pushed him with such force so as to cause injuries, including excruciating pain, stated a

27  potentially colorable retaliation claim.  Id. at *4.

28         The instant case is distinguishable from Walker.  In Walker, the defendant used excessive

                                        6

force in response to the plaintiff's request to speak to the captain.  In the instant case, defendant Pesce did not use force in response to plaintiff's requests for a property receipt and 602 form and to see the sergeant.  Rather, defendant Pesce ordered plaintiff to return to his cell.  As discussed above, this order did not constitute an adverse action.

For the following reasons, the undersigned further finds that defendant Pesce's alleged use of force after plaintiff disobeyed the order to return to his cell did not constitute an adverse action.  After plaintiff disobeyed the order to return to his cell, plaintiff alleges that defendant Pesce and Kelly attempted to drag plaintiff to his cell.  Defendants took these actions after plaintiff disobeyed the order to return to his cell and not in response to plaintiff's request for a 602 form and property receipt and to speak to the sergeant.  Plaintiff's refusal to obey the order to return to his cell did not convert defendants' actions to enforce the order into an adverse action.  Moreover, as discussed herein, plaintiff has not pled sufficient facts demonstrating that defendant Pesce used excessive force.  For these reasons, the actions of defendant Pesce after plaintiff disobeyed the order to return to his cell were not adverse actions.

For the reasons discussed above, plaintiff does not state a potentially colorable retaliation claim against defendant Pesce.  Accordingly, this claim is dismissed.

*Excessive Force in Violation of the Eighth Amendment*

"When prison officials use excessive force against prisoners, they violate the inmates' Eighth Amendment right to be free from cruel and unusual punishment."  Clement v. Gomez, 298 F.3d 898, 903 (9th Cir. 2002).  To establish a claim for the use of excessive force in violation of the Eighth Amendment, a plaintiff must establish that prison officials applied force maliciously and sadistically to cause harm, rather than in a good-faith effort to maintain or restore discipline.  Hudson v. McMillian, 503 U.S. 1, 6–7 (1992).  In making this determination, the court may evaluate (1) the need for application of force, (2) the relationship between that need and the amount of force used, (3) the threat reasonably perceived by the responsible officials, and (4) any efforts made to temper the severity of a forceful response.  Id. at 7; see also id. at 9–10 ("The Eighth Amendment's prohibition of cruel and unusual punishment necessarily excludes from constitutional recognition de minimis uses of physical force, provided that the use of force is not

1    of a sort repugnant to the conscience of mankind." (internal quotation marks and citations

2    omitted)).

3           Plaintiff alleges that defendants Pesce, Kelly, Culum and Gamaz used excessive force in

4    violation of the Eighth Amendment.  (ECF No. 1 at 19.)

5           In particular, plaintiff alleges that defendants Pesce and Kelly used excessive force to

6    move plaintiff to his cell after plaintiff disobeyed the order to go to his cell.  At the outset, the

7    undersigned observes that even if plaintiff disagreed with the order to return to his cell, an

8    inmate's refusal to comply with orders may present a threat to the safety and security of a prison.

9    Lewis v. Downey, 581 F.3d 467, 476 (7th Cir. 2009); Whitley v. Albers, 475 U.S. 312, 320-22

10   (1986).

11          "Orders given must be obeyed.  Inmates cannot be permitted to decide which orders they

12   will obey, and when they will obey them…Inmates are and must be required to obey orders.

13   When an inmate refuse[s] to obey a proper order, he is attempting to assert his authority over a

14   portion of the institution and its officials.  Such refusals and denial of authority place the staff and

15   other inmates in danger."  Lewis, 581 F.3d at 476, (quoting Soto v. Dickey, 744 F.2d 1260, 1267

16   (7th Cir. 1984)).

17          While plaintiff disagreed with the order to return to his cell, this order was not improper.

18   Based on plaintiff's failure to obey the order to return to his cell, the undersigned finds that

19   defendants' attempt to drag plaintiff back to his cell was not excessive force.

20          For the following reasons, the undersigned further finds that plaintiff has not pled

21   sufficient facts demonstrating that defendants used excessive force after plaintiff resisted their

22   attempts to drag him to his cell.  It is not the law that once a prisoner resists a correctional officer,

23   the officer may use whatever amount of force he or she wishes to subdue the individual.  Whitley,

24   475 U.S. at 321.  However, plaintiff alleges that defendant Kelly brought plaintiff to the ground

25   after plaintiff physically resisted defendants' attempts to drag him to his cell by swinging his legs

26   forward, causing defendant Pesce to fall.  Although plaintiff was handcuffed when this incident

27   occurred and hit his head on the floor when defendant Kelly brought him to the ground, the

28   undersigned does not find that these allegations state a potentially colorable excessive force claim

1   against defendants Kelly or Pesce.  Defendant Kelly appears to have used a reasonable amount of

2   force based on the perceived threat caused by plaintiff's physical resistance, combined with

3   plaintiff's earlier refusal to obey the order to return to his cell.  Most importantly, plaintiff does

4   not allege that defendant Kelly intentionally slammed plaintiff's head to the floor in order to

5   cause plaintiff pain.  Accordingly, this claim of excessive force against defendants Kelly and

6   Pesce is dismissed.

7        Plaintiff also alleges that after defendant Kelly brought plaintiff to the ground, defendants

8   Kelly and Pesce handled him aggressively.  However, plaintiff alleges no facts describing the

9   alleged aggressive handling.  For these reasons, these allegations also fail to state a potentially

10  colorable Eighth Amendment excessive force claim.

11       Plaintiff's allegations that defendants Culum and Gamaz assaulted him state a potentially

12  colorable Eighth Amendment claim.

13       In the discussion of his Eighth Amendment claim, plaintiff also alleges that defendants

14  Culum and Gamaz used excessive force when they applied handcuffs to plaintiff's wrists so

15  tightly that they cut off the circulation to plaintiff's wrists and hands.  (Id. at 20-21.)  Plaintiff

16  alleges that defendant Clay did not loosen the handcuffs after plaintiff begged for their removal.

17  (Id.)  These allegations state a potentially colorable Eighth Amendment claim against defendants

18  Culum, Gamaz and Clay.

19       In his discussion of his Eighth Amendment claim, plaintiff also alleges that defendant

20  Clay "and the remaining defendants that were present during the time these constitutional

21  infractions were taking place, chose to stand by and watch what their co-worker[s] were doing to

22  the plaintiff, and failed to intervene when they knew or should have known that the plaintiff was

23  being subjected to brutality…"  (Id. at 20-21.)

24       A prison official who does not himself use force may violate the Eighth Amendment if he

25  has a reasonable opportunity to intervene in other officials' use of excessive force but does not do

26  so.  See Robins v. Meechams, 60 F.3d 1436, 1442 (9th Cir. 1995).  Plaintiff does not allege which

27  alleged excessive force incidents defendant Clay and the other defendants witnessed and failed to

28  intervene.  Plaintiff's claim that these defendants failed to intervene is so vague and conclusory

1    that the undersigned cannot determine whether plaintiff states a potentially colorable Eighth

2    Amendment claim.  Accordingly, this claim is dismissed.

3          In the discussion of his Eighth Amendment claim, plaintiff also alleges that defendants

4    Clay and Quiring were the supervising officials "during the time of the incident."  (ECF No. 1 at

5    21.)  Plaintiff alleges that defendants Clay and Quiring failed to adequately supervise, train or

6    control by their supervision the other defendants who used excessive force and filed fabricated

7    rules violation reports and/or criminal reports against plaintiff.  (Id.)

8          A defendant is liable under 42 U.S.C. § 1983 "only upon a showing of personal

9    participation by the defendant."  Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989).  "A

10   supervisor is only liable for constitutional violations of his subordinates if the supervisor

11   participated in or directed the violations, or knew of the violations and failed to act to prevent

12   them.  There is no respondeat superior liability under [§] 1983."  Id.; see also Ashcroft v. Iqbal,

13   556 U.S. 662, 676 (2009) (holding that "[b]ecause vicarious liability is inapplicable to Bivens and

14   § 1983 suits, a plaintiff must plead that each Government official defendant, through the official's

15   own individual actions, has violated the Constitution").

16         A supervisor's failure to train or supervise subordinates may give rise to individual

17   liability under § 1983 where the failure to train amounts to deliberate indifference to the rights of

18   persons with whom the subordinates come into contact.  See Canell v. Lightner, 143 F.3d 1210,

19   1213-14 (9th Cir. 1998).  To impose liability under a failure to train theory, a plaintiff must allege

20   sufficient facts that the subordinate's training was inadequate, the inadequate training was a

21   deliberate choice on the part of the supervisor, and the inadequate training caused a constitutional

22   violation.  Id. at 1214; see also City of Canton v. Harris, 489 U.S. 378, 391 (1989); Clement v.

23   Gomez, 298 F.3d 898, 905 (9th Cir. 2002) (to establish failure to train, a plaintiff must show that

24   "in light of the duties assigned to specific officers or employees, the need for more or different

25   training is obvious, and the inadequacy so likely to result in violations of constitutional rights,

26   that the policy-makers ... can reasonably be said to have been deliberately indifferent to the need."

27   (citation and internal quotation marks omitted)); Connick v. Thompson, 563 U.S. 51, 62 (2011)

28   (citation omitted) ("A pattern of similar constitutional violations by untrained employees is

'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train.").

In part, plaintiff bases the liability of defendants Clay and Quiring on the theory of respondeat superior.  As discussed above, liability for supervisors may not be imposed under a theory of respondeat superior.

Plaintiff's claim that defendants Clay and Quiring failed to train the other defendants is so vague and conclusory that the undersigned cannot determine whether plaintiff has stated a potentially colorable claim.  Ivey v. Board of Regents, 673 F.2d 266, 268 (9th Cir. 1982) (vague and conclusory allegations concerning the involvement of supervisory personnel in civil rights violations or the failure to train or supervise are not sufficient to state a claim).  Accordingly, these claims against defendants Clay and Quiring are dismissed.

*Conspiracy*

A conspiracy claim brought under Section 1983 requires proof of "an agreement or meeting of the minds to violate constitutional rights," Franklin v. Fox, 312 F.3d 423, 441 (9th Cir. 2001) (quoting United Steel Workers of Am. v. Phelps Dodge Corp., 865 F.2d 1539, 1540–41 (9th Cir. 1989) (citation omitted)), and an actual deprivation of constitutional rights, Hart v. Parks, 450 F.3d 1059, 1071 (9th Cir. 2006) (quoting Woodrum v. Woodward County, Okla., 866 F.2d 1121, 1126 (9th Cir. 1989)).  "To be liable, each participant in the conspiracy need not know the exact details of the plan, but each participant must at least share the common objective of the conspiracy."  Franklin, 312 F.3d at 441 (quoting United Steel Workers, 865 F.2d at 1541).

The Ninth Circuit requires a plaintiff alleging a conspiracy to violate civil rights to "state specific facts to support the existence of the claimed conspiracy."  Olsen v. Idaho State Bd. of Med., 363 F.3d 916, 929 (9th Cir. 2004) (citation and internal quotation marks omitted) (discussing conspiracy claim under § 1985); Burns v. County of King, 883 F.2d 819, 821 (9th Cir. 1989) ("To state a claim for conspiracy to violate one's constitutional rights under section 1983, the plaintiff must state specific facts to support the existence of the claimed conspiracy." (citation omitted)).

In support of his conspiracy claim, plaintiff alleges that he filed a staff misconduct complaint regarding "the incident."  (ECF No. 1 at 21.)  Plaintiff alleges that this grievance was

returned to Mule Creek State Prison ("MCSP") with specific instructions as to how prison

officials were to proceed with the ongoing investigation.  (Id. at 22.)  Plaintiff alleges that

defendants "Holmes, Moseley and Covello along with the other defendants" entered into a

conspiracy to cover-up the excessive force against plaintiff by refusing to follow the directions of

their superiors to investigate the use of force against plaintiff and the false charges against

plaintiff for battery on a peace officer.  (Id.)

Plaintiff's claim that defendants Holmes, Mosely, Covello and the other defendants

entered into a conspiracy to cover-up the alleged excessive force is conclusory and speculative.

Plaintiff does not describe which of the incidents of alleged excessive force these defendants

allegedly failed to investigate  Plaintiff also does not describe the specific instructions defendants

allegedly received and failed to obey regarding the investigation of plaintiff's excessive force

claims.  Plaintiff also does not specifically describe each defendants' involvement in the alleged

failure to investigate his claims of excessive force.  For these reasons, plaintiff's conspiracy claim

is dismissed.

*Due Process*

In the section of the complaint addressing plaintiff's due process claim, plaintiff describes

the damages he seeks.  (Id. at 22-24.)  Plaintiff does not allege how any defendant violated his

right to due process in this section of his complaint.  Accordingly, plaintiff's due process claim is

dismissed.

Plaintiff also alleges that "staff" retaliated against him when they stole or threw away his

personal legal books and other property when they packed up his property and took him to

administrative segregation on June 2, 2020.  (Id. at 23.)  Plaintiff alleges that the grievance he

filed regarding the alleged retaliation was not timely processed.  (Id. at 24.)

The Civil Rights Act under which this action was filed provides as follows:

> Every person who, under color of [state law] . . . subjects, or causes
> to be subjected, any citizen of the United States . . . to the deprivation
> of any rights, privileges, or immunities secured by the Constitution .
> . . shall be liable to the party injured in an action at law, suit in equity,
> or other proper proceeding for redress.

42 U.S.C. § 1983.  The statute requires that there be an actual connection or link between the

1   actions of the defendants and the deprivation alleged to have been suffered by plaintiff.  See

2   Monell v. Department of Social Servs., 436 U.S. 658 (1978) ("Congress did not intend § 1983

3   liability to attach where . . . causation [is] absent."); Rizzo v. Goode, 423 U.S. 362 (1976) (no

4   affirmative link between the incidents of police misconduct and the adoption of any plan or policy

5   demonstrating their authorization or approval of such misconduct).  "A person 'subjects' another

6   to the deprivation of a constitutional right, within the meaning of § 1983, if he does an affirmative

7   act, participates in another's affirmative acts or omits to perform an act which he is legally

8   required to do that causes the deprivation of which complaint is made." Johnson v. Duffy, 588

9   F.2d 740, 743 (9th Cir. 1978).

10      Moreover, supervisory personnel are generally not liable under § 1983 for the actions of

11   their employees under a theory of respondeat superior and, therefore, when a named defendant

12   holds a supervisorial position, the causal link between him and the claimed constitutional

13   violation must be specifically alleged.  See Fayle v. Stapley, 607 F.2d 858, 862 (9th Cir. 1979)

14   (no liability where there is no allegation of personal participation); Mosher v. Saalfeld, 589 F.2d

15   438, 441 (9th Cir. 1978) (no liability where there is no evidence of personal participation), cert.

16   denied, 442 U.S. 941 (1979).  Vague and conclusory allegations concerning the involvement of

17   official personnel in civil rights violations are not sufficient.  See Ivey v. Board of Regents, 673

18   F.2d 266, 268 (9th Cir. 1982) (complaint devoid of specific factual allegations of personal

19   participation is insufficient).

20      While it is unclear if plaintiff intends to raise a retaliation claim, no defendants are linked

21   to this claim.  Accordingly, the complaint fails to state a potentially colorable retaliation claim.

22      Plaintiff may also be alleging that the failure of prison officials to timely process his

23   grievance raising his retaliation claim violated due process.  However, no defendants are linked to

24   this claim.  In addition, an official's allegedly improper processing of a prisoner's grievance or

25   appeal, without more, does not serve as a sufficient basis for section 1983 liability.  Ramirez v.

26   Galaza, 334 F.3d 850, 860 (9th Cir. 2003) (prisoners do not have a "separate constitutional

27   entitlement to a specific prison grievance procedure.") (citation omitted); Mann v. Adams, 855

28   F.2d 639, 640 (9th Cir. 1988) (due process not violated simply because defendant fails properly to

1 | process grievances submitted for consideration).  Accordingly, plaintiff's complaint does not state

2 | a potentially colorable due process claim based on the alleged untimely processing of plaintiff's

3 | grievance.

4 | *Pending Criminal Charges*

5 | In the complaint, plaintiff alleges that criminal charges are pending against him in state

6 | court based on the allegations of excessive force.  (ECF No. 1 at 23.)   For the reasons stated

7 | herein, plaintiff is ordered to file further briefing addressing the relationship between the pending

8 | criminal charges and his excessive force claims.

9 | In Heck v. Humphrey, 512 U.S. 477, 486-87 (1994), the Supreme Court held:

> [T]o recover damages for an allegedly unconstitutional conviction or
> imprisonment, or for other harm caused by actions whose lawfulness
> would render a conviction or sentence invalid, a § 1983 plaintiff must
> prove that the conviction or sentence has been reversed on direct
> appeal, expunged by executive order, declared invalid by a state
> tribunal authorized to make such determination, or called into
> question by a federal court's issuance of a writ of habeas corpus[.]

14 | 512 U.S. at 487.

15 | Heck does not bar plaintiff from bringing an action raising claims challenging ongoing

16 | criminal proceedings.  However, Wallace v. Kato, 549 U.S. 384 (2007) explains that such an

17 | action should be stayed:

> [i]f plaintiff files a false-arrest claim before he [or she] has been
> convicted (or files any other claim related to rulings that likely will
> be made in a pending or anticipated criminal trial), it is within the
> power of the district court, and in accord with common practice, to
> stay the civil action until the criminal case or the likelihood of a
> criminal case is ended.

22 | 459 U.S. 393-94.

23 | Later, "[i]f the plaintiff is convicted, and if the stayed civil suit would impugn that

24 | conviction, Heck requires dismissal; otherwise, the case may proceed."  Yuan v. City of Los

25 | Angeles, 2010 WL 3632810 at *5 (C.D. Cal. Aug. 19, 2010) (citing Wallace, 549 U.S. at 393);

26 | Peyton v. Burdick, 358 Fed.Appx. 961 (9th Cir. 2009) (vacating judgment in a § 1983 case where

27 | claims implicated rulings likely to be made in pending state court criminal proceedings and

28 | remanding for district court to stay action until pending state court proceedings concluded);

1    Valenzuela v. Santiesteban, 2021 WL 1845544, at *3-4 (E.D. Cal. Apr. 9 2021) (staying

2    excessive force case where related criminal prosecution pending); Martinez v. Vivas  v. City of

3    Riverside, 2016 WL 9001020, at *3 (C.D. Cal. Jan. 12, 2016) (staying excessive force case where

4    criminal prosecution for resisting arrest was pending).

5          If plaintiff's excessive force claim(s) are intertwined with the pending criminal charges,

6    this action should be stayed.  Accordingly, if plaintiff files an amended complaint, plaintiff shall

7    address whether the pending criminal charges are related to any excessive force claims raised in

8    this action.  If plaintiff does not file an amended complaint, and chooses to proceed on the

9    potentially colorable excessive force claims against defendants Culum, Gamaz and Clay, plaintiff

10   shall file further briefing addressing whether the pending criminal charges are related to the

11   potentially colorable excessive force claims against these defendants.  Following receipt of this

12   briefing, the undersigned will consider whether this action should be stayed.

13         *Conclusion*

14         Plaintiff may proceed forthwith as to his potentially colorable Eighth Amendment claims

15   against defendants Culum, Gamaz and Clay or he may attempt to amend his complaint.

16         If plaintiff elects to attempt to amend his complaint, he has thirty days so to do.  He is not

17   obligated to amend his complaint.

18         If plaintiff elects to proceed forthwith against defendants Culum, Gamaz and Clay with

19   the potentially colorable Eighth Amendment claims he shall return the attached notice within

20   thirty days.  Plaintiff shall also file the further briefing discussed above addressing the

21   relationship between the potentially colorable Eighth Amendment excessive force claims against

22   these defendants and the pending criminal charges.  Following receipt of this briefing, the

23   undersigned will consider whether this action should be stayed.

24         Plaintiff is advised that in an amended complaint he must clearly identify each defendant

25   and the action that defendant took that violated his constitutional rights.  The court is not required

26   to review exhibits to determine what plaintiff's charging allegations are as to each named

27   defendant.  The charging allegations must be set forth in the amended complaint so defendants

28   have fair notice of the claims plaintiff is presenting.

1    Any amended complaint must show the federal court has jurisdiction, the action is brought

2    in the right place, and plaintiff is entitled to relief if plaintiff's allegations are true.  It must

3    contain a request for particular relief.  Plaintiff must identify as a defendant only persons who

4    personally participated in a substantial way in depriving plaintiff of a federal constitutional right.

5    Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978) (a person subjects another to the deprivation

6    of a constitutional right if he does an act, participates in another's act or omits to perform an act

7    he is legally required to do that causes the alleged deprivation).  If plaintiff contends he was the

8    victim of a conspiracy, he must identify the participants and allege their agreement to deprive him

9    of a specific federal constitutional right.

10    In an amended complaint, the allegations must be set forth in numbered paragraphs.  Fed.

11    R. Civ. P. 10(b).  Plaintiff may join multiple claims if they are all against a single defendant.  Fed.

12    R. Civ. P. 18(a).  If plaintiff has more than one claim based upon separate transactions or

13    occurrences, the claims must be set forth in separate paragraphs.  Fed. R. Civ. P. 10(b).

14    The federal rules contemplate brevity.  See Galbraith v. County of Santa Clara, 307 F.3d

15    1119, 1125 (9th Cir. 2002) (noting that "nearly all of the circuits have now disapproved any

16    heightened pleading standard in cases other than those governed by Rule 9(b)"); Fed. R. Civ. P.

17    84; cf. Rule 9(b) (setting forth rare exceptions to simplified pleading).  Plaintiff's claims must be

18    set forth in short and plain terms, simply, concisely and directly.  See Swierkiewicz v. Sorema

19    N.A., 534 U.S. 506, 514 (2002) ("Rule 8(a) is the starting point of a simplified pleading system,

20    which was adopted to focus litigation on the merits of a claim."); Fed. R. Civ. P. 8.  Plaintiff must

21    not include any preambles, introductions, argument, speeches, explanations, stories, griping,

22    vouching, evidence, attempts to negate possible defenses, summaries, and the like.  McHenry v.

23    Renne, 84 F.3d 1172, 1177-78 (9th Cir. 1996) (affirming dismissal of § 1983 complaint for

24    violation of Rule 8 after warning); see Crawford-El v. Britton, 523 U.S. 574, 597 (1998)

25    (reiterating that "firm application of the Federal Rules of Civil Procedure is fully warranted" in

26    prisoner cases).  The court (and defendant) should be able to read and understand plaintiff's

27    pleading within minutes.  McHenry, 84 F.3d at 1179-80.  A long, rambling pleading including

28    many defendants with unexplained, tenuous or implausible connection to the alleged

16

1    constitutional injury, or joining a series of unrelated claims against many defendants, very likely

2    will result in delaying the review required by 28 U.S.C. § 1915 and an order dismissing plaintiff's

3    action pursuant to Fed. R. Civ. P. 41 for violation of these instructions.

4         A district court must construe a pro se pleading "liberally" to determine if it states a claim

5    and, prior to dismissal, tell a plaintiff of deficiencies in his complaint and give plaintiff an

6    opportunity to cure them.  See Lopez, 203 F.3d at 1130-31.  While detailed factual allegations are

7    not required, "[t]hreadbare recitals of the elements of a cause of action, supported by mere

8    conclusory statements, do not suffice."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell

9    Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  Plaintiff must set forth "sufficient factual

10   matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft, 556

11   U.S. at 678 (quoting Bell Atlantic Corp., 550 U.S. at 570).

12
13
14
15
16
          A claim has facial plausibility when the plaintiff pleads factual
          content that allows the court to draw the reasonable inference that the
          defendant is liable for the misconduct alleged. The plausibility
          standard is not akin to a "probability requirement," but it asks for
          more than a sheer possibility that a defendant has acted unlawfully.
          Where a complaint pleads facts that are merely consistent with a
          defendant's liability, it stops short of the line between possibility and
          plausibility of entitlement to relief.

17   Ashcroft, 556 U.S. at 678 (citations and quotation marks omitted).  Although legal conclusions

18   can provide the framework of a complaint, they must be supported by factual allegations, and are

19   not entitled to the assumption of truth.  Id. at 1950.

20        An amended complaint must be complete in itself without reference to any prior pleading.

21   Local Rule 220; See Ramirez v. County of San Bernardino, 806 F.3d 1002, 1008 (9th Cir. 2015)

22   ("an 'amended complaint supersedes the original, the latter being treated thereafter as non-

23   existent.'" (internal citation omitted)).  Once plaintiff files an amended complaint, the original

24   pleading is superseded.

25        By signing an amended complaint, plaintiff certifies he has made reasonable inquiry and

26   has evidentiary support for his allegations, and for violation of this rule the court may impose

27   sanctions sufficient to deter repetition by plaintiff or others.  Fed. R. Civ. P. 11.

28        A prisoner may bring no § 1983 action until he has exhausted such administrative

1   remedies as are available to him.  42 U.S.C. § 1997e(a).  The requirement is mandatory.  Booth v.

2   Churner, 532 U.S. 731, 741 (2001).  California prisoners or parolees may appeal "departmental

3   policies, decisions, actions, conditions, or omissions that have a material adverse effect on the[ir]

4   welfare. . . ."  Cal. Code Regs. tit. 15, §§ 3084.1, et seq.  An appeal must be presented on a CDC

5   form 602 that asks simply that the prisoner "describe the problem" and "action requested."

6   Therefore, this court ordinarily will review only claims against prison officials within the scope of

7   the problem reported in a CDC form 602 or an interview or claims that were or should have been

8   uncovered in the review promised by the department.

9          Accordingly, IT IS HEREBY ORDERED that:

10         1.  Plaintiff's request for leave to proceed in forma pauperis is granted.

11         2.  Plaintiff is obligated to pay the statutory filing fee of $350.00 for this action.  Plaintiff

12   is assessed an initial partial filing fee in accordance with the provisions of 28 U.S.C.

13   § 1915(b)(1).  All fees shall be collected and paid in accordance with this court's order to the

14   Director of the California Department of Corrections and Rehabilitation filed concurrently

15   herewith.

16         3.  All claims and defendants but for the potentially colorable Eighth Amendment claims

17   against defendants Culum, Gamaz and Clay are dismissed with leave to amend.  Within thirty

18   days of service of this order, plaintiff may amend his complaint to attempt to state cognizable

19   claims against these defendants.  Plaintiff is not obliged to amend his complaint.

20         4.  The allegations in the pleading are sufficient to state a potentially cognizable claim

21   against defendants Culum, Gamaz and Clay.  See 28 U.S.C. § 1915A.  If plaintiff opts to proceed

22   on his original complaint as to these defendants, he shall return the attached notice within thirty

23   days of service of this order.

24         5.  If plaintiff opts to proceed on the original complaint as to his potentially colorable

25   Eighth Amendment claims against defendants Culum, Gamaz and Clay, within thirty days of the

26   date of this order he shall file further briefing addressing the relationship between his potentially

27   colorable excessive force claims and his pending criminal charges;

28   ////

1    6.  Failure to comply with this order will result in a recommendation that this action be

2    dismissed.

3    Dated:  August 25, 2022

4

5                                                    KENDALL J. NEWMAN
                                                     UNITED STATES MAGISTRATE JUDGE
6

7

8

9    Mont1156.14

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2

3

4

5

6

7

8                            UNITED STATES DISTRICT COURT

9                         FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   DWAYNE S. MONTGOMERY,                        No.  2: 22-cv-1156 KJN P

12                  Plaintiff,

13        v.                                       NOTICE

14   M. CULUM, et al.,

15                  Defendants.

16
           Plaintiff opts to proceed with the original complaint as to the potentially colorable
17   Eighth Amendment claims against defendants Culum, Gamaz and Clay.
           Plaintiff consents to the dismissal of the remaining claims and defendants without
18   prejudice. _____

19        OR

20        _____ Plaintiff opts to file an amended complaint and delay service of process.

21   DATED:

22                                          _____
                                            Plaintiff
23

24

25

26

27

28