UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DWAYNE MONTGOMERY,<br><br>Plaintiff,<br><br>v.<br><br>M. CULUM, et al.,<br><br>Defendants. | No.  2: 22-cv-1156 KJN P<br><br>ORDER AND FINDINGS AND RECOMMENDATIONS |

Plaintiff is a state prisoner, proceeding without counsel, with a civil rights action pursuant to 42 U.S.C. § 1983.  Pending before the court is plaintiff's amended complaint.  (ECF No. 15.)

Named as defendants are Mule Creek State Prison ("MCSP") Correctional Officers Culum, Gamez, Pesce, Kelly, Hurtado, Sergent and Mott and MCSP Correctional Sergeant Clay. (Id. at 3-4.)  Plaintiff's amended complaint contains three claims for relief:  retaliation, excessive force and denial of mental health care.

For the reasons stated herein, the undersigned recommends dismissal of plaintiff's retaliation claims and plaintiff's claim alleging denial of mental health care pursuant to Coleman v. Brown.  The undersigned separately orders service of plaintiff's claims alleging excessive force and denial of mental health care based on the Eighth Amendment.

////

////

1

Factual Allegations

Plaintiff alleges that on June 1, 2020, defendant Pesce illegally confiscated clothing items belonging to plaintiff. (Id. at 12.) When plaintiff asked defendant Pesce to return the property, defendant Pesce responded, "You can't have it back, next time don't leave your shit on my dayroom benches!" (Id.) Plaintiff then asked defendant Pesce for a property confiscation receipt and a 602 grievance form. (Id.) Defendant Pesce allegedly refused to give plaintiff the requested forms. (Id.)

After reaching the conclusion that any further communication with defendant Pesce would be futile, plaintiff then put his hands behind his back and submitted to handcuffs. (Id. at 12-13.) Defendant Pesce placed plaintiff in restraints and attempted to walk plaintiff toward his cell in order to prevent plaintiff from reporting his misconduct. (Id. at 13.) Plaintiff sat down on the dayroom floor and told defendants Pesce and Hurtado that he would not move until he spoke with the sergeant or the watch commander. (Id.) Defendant Pesce called for additional staff assistance. (Id.) Defendants Kelly and Sergent responded to this call. (Id.)

Upon defendant Kelly's arrival, defendant Kelly and Pesce stepped away and had a conversation. (Id.) Defendant Kelly then told plaintiff that he (plaintiff) could not talk to anyone and that plaintiff needed to "take it to his cell." (Id.) After plaintiff refused to go to his cell, defendant Kelly said, "He spit on me, did you see that, he spit on me!" (Id.) Plaintiff began to protest this lie. (Id.) Plaintiff contends that due to the presence of multiple inmates in the dayroom who saw that plaintiff did not spit on defendant Kelly, defendant Kelly "abandoned this ploy to falsify a fake battery charge on the plaintiff." (Id.)

Because defendants Kelly and Pesce attempted to set plaintiff up with false charges of battery, plaintiff had an anxiety attack. (Id.) Plaintiff began shouting, "I'm having a mental breakdown…I need to see a mental health clinician…I need to talk to the Sergeant right now!" (Id.)

Defendant Kelly then took plaintiff by the left bicep and defendant Pesce took plaintiff by the right bicep. (Id. at 14.) Defendants began to drag plaintiff across the dayroom floor toward his cell as defendants Sergent, Hurtado and Mott watched. (Id. at 13-14.) As defendants Kelly

2

and Pesce dragged plaintiff, plaintiff felt a sharp pain in his shoulders and back due to the aggressive way he was being handled and because plaintiff is mobility impaired. (Id. at 14.) Plaintiff alleges that he had "no choice" but to swing his feet from beneath to the front of his body and place his left foot on the floor. (Id.) This action caused everybody to abruptly stop and defendant Pesce lost his balance, falling on top of plaintiff. (Id.)

Plaintiff alleges that as he fell, defendant Kelly "somehow forcefully slammed me face first into the concrete floor," causing plaintiff to hit the floor hard, disorienting plaintiff. (Id.) Defendants Kelly and Pesce began using wrist and finger restraint maneuvers to intentionally inflict pain on plaintiff. (Id.) As defendants Kelly and Pesce restrained plaintiff, defendant Kelly said, "Now it's a battery." (Id.)

Defendant Sergent then placed plaintiff in ankle restraints. (Id.) Defendant Culum took the ankle chain from defendant Sergent. (Id.) Defendant Culum crossed plaintiff's feet over the other and forcefully drove his full body weight onto plaintiff's ankles and buttocks as hard as he could, causing severe pain to shoot through plaintiff's ankles and feet. (Id.)

Shortly thereafter, defendant Clay entered the housing unit and instructed defendants Culum and Gamez to escort plaintiff to the facility A program office. (Id. at 15.) Defendants Culum and Gamez lifted plaintiff up from the floor and placed him in a wheelchair then put plaintiff in a holding cage. (Id.) Defendant Gamez then removed the restraints from plaintiff's wrists and ankles. (Id.)

Defendant Culum then ordered plaintiff to remove his clothing. (Id.) Plaintiff refused to remove his clothing because he felt anxiety and fear. (Id.) Plaintiff again asked to speak to a mental health clinician. (Id.)

Defendant Culum put the hand restraints back on plaintiff's wrists. (Id.)

Defendant Gamez told defendant Culum that she was going to retrieve some scissors. (Id.) Defendant Culum told plaintiff, "If you give me any more problems, I'm gonna fuck you up nigger!" (Id.) Plaintiff responded, "You ain't gonna do shit to me." (Id.) Defendant Culum then yanked plaintiff from the cage, swung plaintiff 180 degrees and slammed plaintiff's face into the wall. (Id.) Defendant Culum then smashed the heel of his foot down into plaintiff's right foot,

causing plaintiff pain. (Id. at 15-16.) Defendant Culum then lifted plaintiff up off of his feet and slammed plaintiff to the floor. (Id. at 16.) Defendant Culum struck plaintiff in the face with his fists multiple times. (Id.)

As defendant Culum assaulted plaintiff, defendant Gamez returned. (Id.) Defendant Gamez joined in the assault by dropping her full body weight into plaintiff's back and striking plaintiff in the back and rib cage. (Id.)

After the assault, defendant Gamez asked defendant Culum what happened. (Id.) Defendant Culum said that plaintiff attempted to strike him. (Id.) Defendant Gamez reminded defendant Culum that plaintiff was still handcuffed behind his back. (Id.) Defendant Culum then revised his statement, stating that plaintiff struck him in the chest with his shoulder. (Id.)

After plaintiff was returned to the holding cage, plaintiff told defendant Clay that the handcuffs on his wrists were too tight and that plaintiff was losing feeling in both of his wrists. (Id.) Defendant Clay ignored plaintiff's request to loosen the handcuffs. (Id.)

After begging to see a mental health clinician, plaintiff was finally able to speak to a psychiatrist. (Id.) After consulting with defendant Clay, the psychiatrist left without saying anything. (Id. at 17.)

Claim One—Retaliation

*Legal Standard*

"Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567–68 (9th Cir. 2005) (footnote and citations omitted). To prevail on a retaliation claim, a plaintiff may "assert an injury no more tangible than a chilling effect on First Amendment rights." Brodheim v. Cry, 584 F.3d 1262, 1269–70 (9th Cir. 2009). Furthermore, "a plaintiff does not have to show that 'his speech was actually inhibited or suppressed,' but rather that the adverse action at issue 'would chill or silence a person of ordinary firmness from future First Amendment activities.'" Id. at 1271 (citing

1 | Rhodes, 408 F.3d at 568–69).

2 | *Discussion*

3 | Plaintiff alleges a retaliation claim against defendants Pesce, Kelly, Sergent, Hurtado and Mott. (ECF No. 15 at 17.) Plaintiff appears to claim that his protected conduct was asking defendant Pesce for a 602 form and property confiscation receipt in order to report defendant Pesce's wrongful confiscation of plaintiff's personal property. Plaintiff appears to claim that defendants retaliated against him for requesting these forms by denying his requests to see the sergeant and mental health clinician, to whom he could have reported the alleged misconduct.

In the original complaint, plaintiff alleged that defendant Pesce ordered plaintiff to return to his cell after plaintiff asked for a property receipt and to speak with defendant's supervisor. (ECF No. 1 at 15.) In the original complaint, plaintiff alleged that he disobeyed the order to return to his cell. (Id.) In the original complaint, plaintiff appeared to claim that defendant Pesce's order for plaintiff to return to his cell was the adverse action. The undersigned found that this order did not rise to the level of an adverse action that would deter a prisoner of ordinary firmness from further First Amendment activities. (ECF No. 8 at 6.)

The amended complaint omits the allegation made in the original complaint that plaintiff disobeyed defendant Pesce's order to return to his cell. In the amended complaint, plaintiff alleges that he walked to his cell (without being ordered) but stopped and demanded to speak to the sergeant and a mental health clinician.

While it is true that an amended complaint supersedes the original complaint, Lacey v. Maricopa Cty., 693 F.3d 896, 927 (9th Cir. 2012), plaintiff also may not omit relevant facts in an attempt to state a cognizable claim. See Azadpour v. Sun Microsystems, Inc., 2007 WL 2141079, at *2 n. 2 (N.D. Cal. July 23, 2007) ("Where allegations in an amended complaint contradict those in a prior complaint, a district court need not accept the new alleged facts as true, and may, in fact, strike the changed allegations as 'false and sham.'") (citations omitted).

In the amended complaint, plaintiff appears to omit the allegation that he disobeyed defendant Pesce's order to return to his cell in an attempt to state a potentially colorable retaliation claim. Plaintiff may not omit this relevant fact in an attempt to state a potentially

5

colorable claim. Accordingly, the undersigned herein considers whether defendants' denial of plaintiff's requests to see the sergeant and mental health clinician after plaintiff disobeyed the order to return to his cell were adverse actions.

Defendants' denial of plaintiff's requests to see the sergeant and a mental health clinician appear calculated to address plaintiff's refusal to obey the order to return to his cell. Plaintiff has not pled sufficient facts demonstrating that defendants denied his requests to see the sergeant and a mental health clinician *because* he requested a 602 form and a property confiscation receipt. For this reason, the undersigned recommends dismissal of this retaliation claim.

Plaintiff also alleges that "defendants Pesce and Kelly, along with the other named defendants, falsified their Crime/Incident Report(s), to reflect that plaintiff committed a criminal act against defendant Pesce, to cover up his misconduct, and protect him from the plaintiff pursuing other legal action." (ECF No. 15 at 18.)

Plaintiff appears to claim that defendants falsely charged plaintiff with battery in retaliation for his request for a 602 form and a property confiscation receipt. For the following reasons, the undersigned finds that plaintiff has not plead sufficient facts in support of this claim.

First, plaintiff has not plead sufficient facts demonstrating that the battery charge was false. For example, plaintiff does not describe the alleged false statements by defendants in the rules violation report charging him with battery.

In addition, the undersigned finds that plaintiff has not pled sufficient facts demonstrating that defendants filed the allegedly false battery charge against him *because* he requested the 602 form and property confiscation receipt. As discussed above, before defendant Kelly said, "Now it's a battery," several other things occurred: plaintiff disobeyed the order to return to his cell, defendants attempted to drag plaintiff to his cell and plaintiff swung his feet in front of his body, causing plaintiff and defendant Pesce to fall. Based on these circumstances, the undersigned finds that plaintiff's claim that defendants filed the allegedly false battery charges against him *because* he requested a 602 form and property confiscation receipt is speculative and conclusory.

For the reasons discussed above, the undersigned recommends dismissal of plaintiff's claim alleging that defendants retaliated against him by falsely charging him with battery.

Claim Two—Excessive Force

*Legal Standard*

"When prison officials use excessive force against prisoners, they violate the inmates' Eighth Amendment right to be free from cruel and unusual punishment." Clement v. Gomez, 298 F.3d 898, 903 (9th Cir. 2002). To establish a claim for the use of excessive force in violation of the Eighth Amendment, a plaintiff must establish that prison officials applied force maliciously and sadistically to cause harm, rather than in a good-faith effort to maintain or restore discipline. Hudson v. McMillian, 503 U.S. 1, 6–7 (1992). In making this determination, the court may evaluate (1) the need for application of force, (2) the relationship between that need and the amount of force used, (3) the threat reasonably perceived by the responsible officials, and (4) any efforts made to temper the severity of a forceful response. Id. at 7; see also id. at 9–10 ("The Eighth Amendment's prohibition of cruel and unusual punishment necessarily excludes from constitutional recognition de minimis uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." (internal quotation marks and citations omitted)).

*Discussion*

Plaintiff alleges that defendants Pesce, Kelly, Culum and Gamez used excessive force. (ECF No. 15 at 19.) The only specific incident of excessive force plaintiff identifies in the discussion of this claim is when defendants Culum, Gamez and Clay allegedly placed handcuffs on plaintiff so tight they cut off all circulation to plaintiff's hands and wrists. (Id.) Plaintiff alleges that defendants Culum, Gamez and Clay denied his requests to loosen the handcuffs. (Id.) These allegations state a potentially colorable Eighth Amendment excessive force claim against defendants Culum, Gamez and Clay.

Despite plaintiff's failure to identify other specific incidents of excessive force, the undersigned herein discusses the allegations in the amended complaint based on which plaintiff may be alleging excessive force.

Plaintiff alleges that when defendants Pesce and Kelly dragged him, he felt a sharp pain in his shoulders due to the aggressive way they handled him and because he is mobility impaired.

The undersigned finds that these allegations state a potentially colorable Eighth Amendment excessive force claim against defendants Pesce and Kelly.

Plaintiff alleges that as he fell to the floor after he swung his feet forward, defendant Kelly somehow forcefully slammed plaintiff face first into the concrete floor. Plaintiff alleges that defendants Kelly and Pesce began using wrist and finger restraint maneuvers to intentionally inflict pain on plaintiff. The undersigned finds that these allegations state potentially colorable Eighth Amendment excessive force claims against defendants Kelly and Pesce.

Plaintiff alleges that defendant Culum forcefully drove his full body weight down onto plaintiff's ankles and buttocks as hard as he could, causing plaintiff severe pain. The undersigned finds that this allegation states a potentially colorable Eighth Amendment excessive force claim against defendant Culum.

Plaintiff alleges that defendant Culum slammed plaintiff's face into the wall, smashed the heel of his foot into plaintiff's right foot, lifted plaintiff off his feet, slammed plaintiff onto the floor and began striking plaintiff. These allegations state a potentially colorable Eighth Amendment excessive force claim against defendant Culum.

Plaintiff alleges that defendant Gamez joined the assault by defendant Culum. These allegations state a potentially colorable Eighth Amendment excessive force claim against defendant Gamez.

*Heck v. Humphrey*

In the order screening the original complaint, the undersigned observed that plaintiff alleged that criminal charges were pending against him in state court based on the allegations of excessive force raised in the complaint. (ECF No. 8 at 14.)

In Heck v. Humphrey, 512 U.S. 477, 486-87 (1994), the Supreme Court held:

> [T]o recover damages for an allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose lawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus[.]

512 U.S. at 487.

Heck does not bar plaintiff from bringing an action raising claims challenging ongoing criminal proceedings. However, Wallace v. Kato, 549 U.S. 384 (2007), explains that such an action should be stayed:

> [i]f plaintiff files a false-arrest claim before he [or she] has been convicted (or files any other claim related to rulings that likely will be made in a pending or anticipated criminal trial), it is within the power of the district court, and in accord with common practice, to stay the civil action until the criminal case or the likelihood of a criminal case is ended.

459 U.S. 393-94.

Later, "[i]f the plaintiff is convicted, and if the stayed civil suit would impugn that conviction, Heck requires dismissal; otherwise, the case may proceed." Yuan v. City of Los Angeles, 2010 WL 3632810 at *5 (C.D. Cal. Aug. 19, 2010) (citing Wallace, 549 U.S. at 393); Peyton v. Burdick, 358 Fed.Appx. 961 (9th Cir. 2009) (vacating judgment in a § 1983 case where claims implicated rulings likely to be made in pending state court criminal proceedings and remanding for district court to stay action until pending state court proceedings concluded); Valenzuela v. Santiesteban, 2021 WL 1845544, at *3-4 (E.D. Cal. Apr. 9 2021) (staying excessive force case where related criminal prosecution pending); Vivas v. County of Riverside, 2016 WL 9001020, at *3 (C.D. Cal. Jan. 12, 2016) (staying excessive force case where criminal prosecution for resisting arrest was pending).

In the order screening the original complaint, the undersigned found that if plaintiff's excessive force claims were intertwined with the pending criminal charges, this action should be stayed. (ECF No. 8 at 15.) The undersigned ordered plaintiff to address, in the amended complaint, whether the pending criminal charges were related to the excessive force claims raised in the amended complaint. (Id.)

Plaintiff filed separate briefing addressing his pending criminal charges. (ECF No. 14.) After reviewing this briefing and the documents attached, the undersigned cannot determine whether plaintiff's excessive force claims are intertwined with the pending criminal charges. For this reason, the undersigned orders service of plaintiff's excessive force claims. However, the undersigned will recommend that plaintiff's excessive force claims be stayed if it is later

determined that they are intertwined with the pending criminal charges.

Claim Three—Denial of Mental Health Care and Violation of Coleman v. Brown Protocol

*Legal Standard for Eighth Amendment*

The Eighth Amendment prohibits the infliction of "cruel and unusual punishments." U.S. Const. amend. VIII. The unnecessary and wanton infliction of pain constitutes cruel and unusual punishment prohibited by the Eighth Amendment. Whitley v. Albers, 475 U.S. 312, 319 (1986); Estelle v. Gamble, 429 U.S. 97, 105-06 (1976).

If a prisoner's Eighth Amendment claim arises in the context of medical or mental health care the prisoner must allege and prove "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical [or mental health] needs." Estelle, 429 U.S. at 106. An Eighth Amendment medical claim has two elements: "the seriousness of the prisoner's medical need and the nature of the defendant's response to that need." McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992), overruled on other grounds by WMX Techs., Inc. v. Miller, 104 F.3d 1133 (9th Cir. 1997) (en banc).

A medical or mental health need is serious "if the failure to treat the prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.'" McGuckin, 974 F.2d at 1059 (quoting Estelle, 429 U.S. at 104). Indications of a serious medical or mental health need include "the presence of a medical condition that significantly affects an individual's daily activities." Id. at 1059-60. By establishing the existence of a serious medical or mental health need, a prisoner satisfies the objective requirement for proving an Eighth Amendment violation. Farmer v. Brennan, 511 U.S. 825, 834 (1994).

If a prisoner establishes the existence of a serious medical or mental health need, the prisoner must show that prison officials responded to the serious medical need with deliberate indifference. See Id. at 834. In general, deliberate indifference may be shown when prison officials deny, delay, or intentionally interfere with treatment, or may be shown by the way in which prison officials provide such care. Hutchinson v. United States, 838 F.2d 390, 393-94 (9th Cir. 1988).

////

Before it can be said that a prisoner's civil rights have been abridged with regard to medical care, "the indifference to his [or mental health] medical needs must be substantial. Mere 'indifference,' 'negligence,' or 'medical malpractice' will not support this cause of action." Broughton v. Cutter Laboratories, 622 F.2d 458, 460 (9th Cir. 1980) (citing Estelle, 429 U.S. at 105-6). Deliberate indifference is "a state of mind more blameworthy than negligence" and "requires 'more than ordinary lack of due care for the prisoner's interests or safety.'" Farmer, 511 U.S. at 835.

To establish a claim of deliberate indifference arising from delay in providing care, a plaintiff must show that the delay was harmful. See Hallett v. Morgan, 296 F.3d 732, 745-46 (9th Cir. 2002); McGuckin, 974 F.2d at 1059. In this regard, "[a] prisoner need not show his harm was substantial; however, such would provide additional support for the inmate's claim that the defendant was deliberately indifferent to his needs." Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006).

*Discussion*

Plaintiff alleges that defendants Pesce, Kelly, Sergent, Hurtado and Mott failed to provide plaintiff with mental health care after plaintiff told them that he was having a mental health breakdown. (ECF No. 15 at 20.) Plaintiff alleges that defendant Pesce wrote in the rules violation report,

> I was monitoring building 2 dayroom from the podium when I noticed inmate Montgomery acting bizarre, by shouting, "I'm having a mental breakdown!" and pacing back and forth in an agitated state. Due to Montgomery's bizarre behavior, I ordered Montgomery to submit to handcuffs. He complied, and called for escort out of building 2 via state issued radio. Officer B. Kelly responded and grabbed Montgomery left arm as I had Montgomery's right arm. Montgomery continued stating, "I'm having a mental health breakdown, you're going to use force on me do it, …" Simultaneously, Montgomery stopped the escort and kicked back with his right leg striking my left knee causing me to fall forward onto the ground. As I was falling I maintained control of Montgomery's left arm and being struck I was unable to see if any staff used force. Once on the ground, Montgomery was compliant and not resisting. Officers J. Gamez and M. Culum escorted Montgomery from the building in a wheelchair.

(Id. at 21-22.)

Plaintiff appears to claim that, when he had his mental health crisis, defendants Pesce, Kelly, Sergent, Hurtado and Mott should have provided him with mental health treatment rather than attempting to take him to his cell. According to amended complaint, defendant Pesce acknowledged that plaintiff was behaving bizarrely. Based on these allegations, the undersigned finds that plaintiff states a potentially colorable claim for violation of his Eighth Amendment right to adequate mental health care against defendants Pesce, Kelly, Sergeant, Hurtado and Mott.[1]

*Coleman v. Brown*

Plaintiff may be alleging that defendants violated the court decree issued in Coleman v. Brown when they failed to provide him with mental health care. For the following reasons, the undersigned finds that plaintiff does not state a potentially colorable claim based on an alleged violation of the Coleman decree.

Coleman v. Brown, No. 90-CV-520-KJM-DB (E.D. Cal), is a class action in the Eastern District concerning the constitutional adequacy of the mental health care provided to inmates by the California Department of Corrections and Rehabilitation ("CDCR"). Plaintiff cannot seek relief based on alleged violations of the court order in the Coleman class action. Espinoza v. Saldivar, 2016 WL 7159249, at *3 (E.D. Cal. Dec. 8, 2016). Accordingly, to the extent plaintiff raises a claim based on alleged violations of orders issued in Coleman, such a claim should be dismissed.

Conclusion

As discussed above, the undersigned finds that plaintiff's amended complaint states the following potentially colorable claims for relief: 1) defendants Culum, Gamaz and Clay used excessive force in violation of the Eighth Amendment when they allegedly applied handcuffs tightly and disregarded plaintiff's request to loosen the handcuffs; 2) defendants Kelly and Pesce used excessive force in violation of the Eighth Amendment when they allegedly attempted to drag

---

[1] In the amended complaint, plaintiff alleges that he later saw a psychiatrist. Although plaintiff was seen by a mental health professional after the incidents alleged, it is unclear if the situation would have escalated the way it allegedly did had plaintiff received mental health treatment at the beginning of the incidents.

plaintiff to his cell; 3) defendant Kelly used excessive force in violation of the Eighth Amendment when he allegedly slammed plaintiff's face into the concrete; 4) defendants Kelly and Pesce used excessive force in violation of the Eighth Amendment when they allegedly used finger and wrist restraint maneuvers to intentionally inflict pain on plaintiff; 5) defendant Culum used excessive force in violation of the Eighth Amendment when he allegedly drove his fully body weight down onto plaintiff's ankles and buttocks as hard as he could, causing plaintiff to suffer severe pain; 6) defendants Culum and Gamez used excessive force in violation of the Eighth Amendment when they allegedly assaulted plaintiff; and 7) defendants Pesce, Kelly, Sergent, Hurtado and Mott violated plaintiff's Eighth Amendment right to adequate mental health care when they allegedly failed to provide mental health treatment. The undersigned separately orders service of defendants as to these claims.

As discussed above, plaintiff fails to state potentially colorable retaliation claims and claims pursuant to Coleman v. Brown. Leave to amend should be "freely given when justice so requires." Fed. R. Civ. P. 15(a). Nevertheless, a pro se litigant's complaint may be dismissed without leave to amend when it is absolutely clear that no amendment can cure the defect. Lucas v. Dep't. of Corrs., 66 F.3d 245, 248 (9th Cir. 1995). The undersigned previously granted plaintiff leave to amend.

The undersigned recommends that plaintiff's retaliation claims and claims pursuant to Coleman v. Brown be dismissed without leave to amend because it is clear that plaintiff cannot cure the defects as to these claims.

Accordingly, IT IS HEREBY ORDERED that the Clerk of the Court shall appoint a district judge to this action; and

IT IS HEREBY RECOMMENDED that plaintiff's retaliation claims and claims based on Coleman v. Brown be dismissed.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, plaintiff may file written objections with the court and serve a copy on all parties. Such a document should be captioned

"Objections to Magistrate Judge's Findings and Recommendations." Plaintiff is advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

Dated:  March 28, 2023

/s/ Kendall J. Newman
KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

Mont1156.ame