1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                    FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   DWAYNE MONTGOMERY,                      No.  2:22-cv-1156 DC CSK P

12                  Plaintiff,

13       v.                                  ORDER AND FINDINGS AND
                                             RECOMMENDATIONS
14   M. CULUM, et al.,

15                  Defendants.

16

## I.  INTRODUCTION

Plaintiff is a state prisoner, proceeding without counsel, with a civil rights action pursuant to 42 U.S.C. § 1983.  Pending before the Court is defendants' motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) on the grounds that this action is barred under the favorable termination doctrine in Heck v. Humphrey, 512 U.S. 477 (1994).  (ECF No. 43). Defendants' motion to dismiss is fully briefed.  (ECF Nos. 43, 50, 51.)  Also pending is plaintiff's motion for an extension of time to file an opposition to the motion to dismiss.  (ECF No. 49.)

For the following reasons, plaintiff's motion for an extension of time is granted.  For the following reasons, this Court recommends that defendants' motion to dismiss be granted as to plaintiff's claim alleging that defendant Culum used excessive force when he yanked plaintiff out of the holding cage, swung plaintiff 180 degrees, slammed plaintiff into the wall and smashed his heel down on plaintiff's foot; defendants' motion to dismiss should be denied in all other

1    respects.

2          In the motion to dismiss, defendants state that records indicate that plaintiff's legal name

3    is Dwayne Montogomery.  (ECF No. 43 at 1 n. 1.)  In his pleadings, plaintiff identifies himself as

4    Dwayne Montgomery.  The caption of the instant action will continue to identify plaintiff as

5    Dwayne Montgomery.  Several of the records referred to by defendants identify plaintiff as

6    Dwayne Montogomery.  To the extent this Court cites these records, this Court will refer to the

7    spelling of plaintiff's last name contained in these records.

8    **II.  PLAINTIFF'S MOTION FOR EXTENSION OF TIME**

9          On January 21, 2025, plaintiff filed a motion for extension of time to file his opposition to

10   defendants' motion to dismiss.  (ECF No. 49.)  After reviewing plaintiff's motion, this Court

11   finds good cause to grant plaintiff's motion for extension of time.  Plaintiff subsequently filed an

12   opposition, and defendants filed a reply to this opposition.  (ECF Nos. 50, 51.)  The Court has

13   reviewed plaintiff's opposition and defendants' reply.

14   **III.  LEGAL STANDARD FOR MOTION TO DISMISS**

15         Rule 12(b)(6) of the Federal Rules of Civil Procedures provides for motions to dismiss for

16   "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  In

17   considering a motion to dismiss pursuant to Rule 12(b)(6), the court must accept as true the

18   allegations of the complaint in question, Erickson v. Pardus, 551 U.S. 89 (2007), and construe the

19   pleading in the light most favorable to the plaintiff.  See Jenkins v. McKeithen, 395 U.S. 411, 421

20   (1969); Meek v. County of Riverside, 183 F.3d 962, 965 (9th Cir. 1999).  Still, to survive

21   dismissal for failure to state a claim, a pro se complaint must contain more than "naked

22   assertions," "labels and conclusions" or "a formulaic recitation of the elements of a cause of

23   action."  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555-57 (2007).  In other words,

24   "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory

25   statements do not suffice."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  Furthermore, a claim

26   upon which the court can grant relief must have facial plausibility.  See Twombly, 550 U.S. at

27   570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the

28   court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

2

1    Iqbal, 556 U.S. at 678.  A motion to dismiss for failure to state a claim should not be granted

2    unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claims

3    which would entitle him to relief.  See Hishon v. King & Spaulding, 467 U.S. 69, 73 (1984).

4    "Ordinarily, a court may look only at the face of the complaint to decide a motion to dismiss."

5    Van Buskirk v. Cable News Network, Inc., 284 F.3d 977, 980 (9th Cir. 2002).  "[I]f a district

6    court considers evidence outside the pleadings, it must normally convert the 12(b)(6) motion into

7    a Rule 56 motion for summary judgment, and it must give the nonmoving party an opportunity to

8    respond."  United States v. Ritchie, 342 F.3d 903, 907 (9th Cir. 2003).  "A court may, however,

9    consider certain materials—documents attached to the complaint, documents incorporated by

10    reference in the complaint, or matters of judicial notice—without converting the motion to

11    dismiss into a motion for summary judgment."  Id. at 908; see also Tellabs, Inc. v. Makor Issues

12    & Rights, Ltd., 551 U.S. 308, 322 (2007) ("[C]ourts must consider the complaint in its entirety, as

13    well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss,

14    in particular, documents incorporated by reference, and matters of which a court may take judicial

15    notice.").

16    **IV.  PLAINTIFF'S CLAIMS**

17          This action proceeds on plaintiff's amended complaint as to defendants Culum, Gamez,

18    Clay, Kelly, Pesce, Sergent, Hurtado and Mott.  (ECF No. 15.)  The alleged deprivations occurred

19    at Mule Creek State Prison ("MCSP").  (Id.)  In the amended complaint, plaintiff seeks money

20    damages.  (Id. at 8.)

21          Plaintiff alleges that on June 1, 2020, defendant Pesce illegally confiscated clothing items

22    belonging to plaintiff.  (Id. at 12.)  When plaintiff asked defendant Pesce to return the property,

23    defendant Pesce responded, "You can't have it back, next time don't leave your shit on my

24    dayroom benches!"  (Id.)  Plaintiff then asked defendant Pesce for a property confiscation receipt

25    and a 602 grievance form.  (Id.)  Defendant Pesce refused to give plaintiff the requested forms.

26    (Id.)

27          After reaching the conclusion that any further communication with defendant Pesce would

28    be futile, plaintiff then put his hands behind his back and submitted to handcuffs.  (Id. at 12-13.)

Defendant Pesce placed plaintiff in restraints and attempted to walk plaintiff toward his cell in order to prevent plaintiff from reporting his misconduct.  (Id. at 13.)  Plaintiff sat down on the dayroom floor and told defendants Pesce and Hurtado that he would not move until he spoke with the sergeant or the watch commander.  (Id.)  Defendant Pesce called for additional staff assistance.  (Id.)  Defendants Kelly and Sergent responded to this call.  (Id.)

Upon defendant Kelly's arrival, defendant Kelly and Pesce stepped away and had a conversation.  (Id.)  Defendant Kelly then told plaintiff that he (plaintiff) could not talk to anyone and that plaintiff needed to take it to his cell.  (Id.)  After plaintiff refused to go to his cell, defendant Kelly said, "He spit on me, did you see that, he spit on me!"  (Id.)  Plaintiff began to protest this lie.  (Id.)  Plaintiff contends that due to the presence of multiple inmates in the dayroom who saw that plaintiff did not spit on defendant Kelly, defendant Kelly "abandoned this ploy to falsify a fake battery charge on the plaintiff."  (Id.)

Because defendants Kelly and Pesce attempted to set plaintiff up with false charges of battery, plaintiff had an anxiety attack.  (Id.)  Plaintiff began shouting, "I'm having a mental breakdown…I need to see a mental health clinician…I need to talk to the Sergeant right now!" (Id.)

Defendant Kelly then took plaintiff by the left bicep and defendant Pesce took plaintiff by the right bicep.  (Id. at 14.)  Defendants Kelly and Pesce began to drag plaintiff across the dayroom floor toward his cell as defendants Sergent, Hurtado and Mott watched.  (Id. at 13-14.)  As defendants Kelly and Pesce dragged plaintiff, plaintiff felt a sharp pain in his shoulders and back due to the aggressive way he was being handled and because plaintiff is mobility impaired.  (Id. at 14.)  Plaintiff alleges that he had "no choice" but to swing his feet from beneath to the front of his body and place his left foot on the floor.  (Id.)  This action caused everybody to abruptly stop and defendant Pesce lost his balance, falling on top of plaintiff.  (Id.)

Plaintiff alleges that as he fell, defendant Kelly "somehow forcefully slammed me face first into the concrete floor," causing plaintiff to hit the floor hard, disorienting plaintiff.  (Id.) Defendants Kelly and Pesce began using wrist and finger restraint maneuvers to intentionally inflict pain in plaintiff.  (Id.)  As defendants Kelly and Pesce restrained plaintiff, defendant Kelly

4

1    said, "Now it's a battery." (Id.)

2          Defendant Sergent then placed plaintiff in ankle restraints. (Id.) Defendant Culum took

3    the ankle chain from defendant Sergent. (Id.) Defendant Culum crossed plaintiff's feet over the

4    other and forcefully drove his full body weight onto plaintiff's ankles and buttocks as hard as he

5    could, causing severe pain to shoot through plaintiff's ankles and feet. (Id.)

6          Shortly thereafter, defendant Clay entered the housing unit and instructed defendants

7    Culum and Gamez to escort plaintiff to the facility A program office. (Id. at 15.) Defendants

8    Culum and Gamez lifted plaintiff up from the floor and placed him in a wheelchair, then put

9    plaintiff in a holding cage. (Id.) Defendant Gamez then removed the restraints from plaintiff's

10   wrists and ankles. (Id.) Defendant Culum then ordered plaintiff to remove his clothing. (Id.)

11   Plaintiff refused to remove his clothing because he felt anxiety and fear. (Id.) Plaintiff again

12   asked to speak to a mental health clinician. (Id.) Defendant Culum put the hand restraints back

13   on plaintiff's wrists. (Id.)

14         Defendant Gamez told defendant Culum that she was going to retrieve some scissors.

15   (Id.) Defendant Culum told plaintiff, "If you give me any more problems, I'm gonna fuck you up

16   nigger!" (Id.) Plaintiff responded, "You ain't gonna do shit to me." (Id.) Defendant Culum then

17   yanked plaintiff from the holding cage, swung plaintiff 180 degrees and slammed plaintiff's face

18   into the wall. (Id.) Defendant Culum then smashed the heel of his foot down into plaintiff's right

19   foot, causing plaintiff pain. (Id. at 15-16.) Defendant Culum then lifted plaintiff up off of his feet

20   and slammed plaintiff to the floor. (Id. at 16.) Defendant Culum struck plaintiff in the face with

21   his fists multiple times. (Id.)

22         As defendant Culum assaulted plaintiff, defendant Gamez returned. (Id.) Defendant

23   Gamez joined in the assault by dropping her full body weight into plaintiff's back and striking

24   plaintiff in the back and rib cage. (Id.)

25         After the assault, defendant Gamez asked defendant Culum what happened. (Id.)

26   Defendant Culum said that plaintiff attempted to strike him. (Id.) Defendant Gamez reminded

27   defendant Culum that plaintiff was still handcuffed behind his back. (Id.) Defendant Culum then

28   revised his statement, stating that plaintiff struck him in the chest with his shoulder. (Id.)

After plaintiff was returned to the holding cage, plaintiff told defendant Clay that the handcuffs on his wrists were too tight and that plaintiff was losing feeling in both of his wrists. (Id.)  Defendant Clay ignored plaintiff's request to loosen the handcuffs.  (Id.)

After begging to see a mental health clinician, plaintiff was finally able to speak to a psychiatrist.  (Id.)  After consulting with defendant Clay, the psychiatrist left without saying anything.  (Id. at 17.)

The Court ordered service of the following claims raised in the amended complaint: 1) on June 1, 2020, defendants Culum, Gamez and Clay used excessive force in violation of the Eighth Amendment when they allegedly applied handcuffs tightly and disregarded plaintiff's request to loosen the handcuffs; 2) on June 1, 2020, defendants Kelly and Pesce used excessive force in violation of the Eighth Amendment when they allegedly attempted to drag plaintiff to his cell; 3) on June 1, 2020, defendant Kelly used excessive force in violation of the Eighth Amendment when he allegedly slammed plaintiff's face into the concrete: 4) on June 1, 2020, defendants Kelly and Pesce used excessive force in violation of the Eighth Amendment when they allegedly used finger and wrist restraint maneuvers to intentionally inflict pain on plaintiff; 5) on June 1, 2020, defendant Culum used excessive force in violation of the Eighth Amendment when he allegedly drove his full body weight down onto plaintiff's ankles and buttocks as hard as he could, causing plaintiff to suffer severe pain; 6) on June 1, 2020, defendants Culum and Gamez used excessive force in violation of the Eighth Amendment when they allegedly assaulted plaintiff; and 7) on June 1, 2020, defendants Pesce, Kelly, Sergent, Hurtado and Mott violated plaintiff's Eighth Amendment right to adequate mental health care when they allegedly failed to provide plaintiff with mental health treatment.  (ECF No. 18 at 1-2.)

## V.  DEFENDANTS' MOTION TO DISMISS

### A.  Legal Standard

"[A] state prisoner's claim for damages is not cognizable under 42 U.S.C. § 1983 if 'a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence,' unless the prisoner can demonstrate that the conviction or sentence has previously been invalidated."  Edwards v. Balisok, 520 U.S. 641, 643 (1997) (quoting Heck, 512 U.S. at 487).  In

1  Edwards, the Supreme Court applied Heck to prison disciplinary proceedings.  See id.  "[I]f the

2  district court determines that the plaintiff's action, even if successful, will *not* demonstrate the

3  invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed

4  to proceed."  Heck, 512 U.S. at 487.  (emphasis in original).  "In evaluating whether claims are

5  barred by Heck, an important touchstone is whether a § 1983 plaintiff could prevail only by

6  negating 'an element of the offense of which he has been convicted.'"  Cunningham v. Gates, 312

7  F.3d 1148, 1153-54 (9th Cir. 2002) (quoting Heck, 512 U.S. at 487 n.6).

8        "To decide whether success on a section 1983 claim would *necessarily* imply the

9  invalidity of a conviction, [the court] must determine which acts formed the basis for the

10  conviction."  Lemos v. County of Sonoma, 40 F.4th 1002, 1006 (9th Cir. 2022) (emphasis in

11  original).  "When the conviction is based on a guilty plea, we look at the record to see which acts

12  formed the basis for the plea."  Lemos, 40 F.4th at 1006 (citations omitted).  It is the defendants'

13  burden to establish the basis for the conviction.  See Sanford v. Motts, 258 F.3d 1117, 1119 (9th

14  Cir. 2001) ("It was the burden of the defendants to establish their defense by showing what the

15  basis was.").  The Ninth Circuit has applied Heck to no contest pleas.  See Sanders v. City of

16  Pittsburg, 14 F.4th 968, 970-72 (9th Cir. 2021).

17        To determine the factual basis of a plea, for Heck purposes, the court looks at the record to

18  see which acts formed the basis for the plea.  See Smith v. City of Hemet, 394 F.3d 689, 698 (9th

19  Cir. 2005) (en banc).  However, if the record is silent as to the factual basis for the plea,

20  defendants will be unable to establish their defense, and plaintiff's § 1983 action will not be Heck

21  barred.  See Martell v. Cole, 115 F.4th 1233, 1239 (9th Cir. 2024) (claim of excessive force was

22  not barred under Heck because the record was "silent about which one (or more) of [plaintiff's]

23  resisting or obstructing acts was (or were) the factual predicate of his guilty plea.").

24        **B.  Requests for Judicial Notice**

25            1.  Defendants' Request for Judicial Notice

26        In the motion to dismiss, defendants request that the Court take judicial notice of several

27  documents.  A court may "judicially notice a fact that is not subject to reasonable dispute because

28  it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately

and readily determined from sources whose accuracy cannot reasonably be questioned."  Fed. R.

Evid. 201(b).  The court may also take judicial notice of matters of public record.  See Lee v. City

of Los Angeles, 250 F.3d 668, 688-89 (9th Cir. 2001), abrogated on other grounds as stated in

Galbraith v. Cty. of Santa Clara, 307 F.3d 1119 (9th Cir. 2002).  When a court takes judicial

notice of a document, "it may do so not for the truth of the facts recited therein, but for the

existence of the [record], which is not subject to reasonable dispute over its authenticity."  Lee,

250 F.3d at 690 (internal quotation marks and citation omitted).

Defendants request that the Court take judicial notice of seven documents filed in Amador

County Superior Court case People v. Montgomery, No. 20-CR-29878: 1) the docket (exhibit A-

1); 2) the felony complaint (exhibit A-2); 3) the certified reporter's transcript from the

preliminary hearing (exhibit A-3); 4) the information (exhibit A-4); 5) the felony plea form

(exhibit A-5); 6) the plea and sentencing minutes (exhibit A-6); and 7) the abstract of judgment

(exhibit A-7).  (ECF No. 43-2 at 3-4.)  This Court takes judicial notice of these seven documents.

See Lininger v. Pfleger, 2017 WL 5128170, at *1 n.1 (N.D. Cal. Nov. 6, 2017) ("The documents

submitted for judicial notice are documents filed in Plaintiff's state court criminal proceedings,

which are suitable for judicial notice under Fed. R. Evid. 201(b).");  Arellano v. Haskins, 2021

WL 1193814, at *6 (E.D. Cal. Mar. 30, 2021) (taking judicial notice of state court criminal

docket, certified copy of preliminary hearing transcript and transcript from change of plea

hearing).

Defendants also request that the Court take judicial notice of records from two California

Department of Corrections and Rehabilitation ("CDCR") Rules Violation Report Logs, nos.

7003864 and 7003865 (exhibits B-1 and B-2).  (ECF No. 43-2 at 4.)  Plaintiff objects to the

request for judicial notice of the records from these rules violation reports on the grounds that the

factfinders at these disciplinary hearings were biased and one-sided.  (ECF No. 50-2 at 2.)

Plaintiff alleges that he was denied due process during these disciplinary proceedings in that he

did not receive a thorough investigation.  (Id.)

Federal courts recognize that rules violation reports fall within the category of public

records subject to judicial notice.  See Daniels v. Valencia, 2018 WL 3640321, at *3 (E.D. Cal.

8

1   July 30, 2018), findings and recommendations adopted, 2018 WL 4636186 (E.D. Cal. Sep. 26,

2   2018).  Taking judicial notice of a rules violation report does not mean that the factual allegations

3   of the rules violation report are deemed to be true.  See id.  "To the contrary, a court cannot

4   generally take judicial notice of the underlying 'factual findings of proceedings or records in

5   another cause so as to supply, without formal introduction of evidence, facts essential to support a

6   contention in a cause then before it.'"  Id. (quoting M/V Am. Queen v. San Diego Marine Constr.

7   Corp., 708 F.3d 1483, 1491 (9th Cir. 1983)).  Accordingly, this Court may take judicial notice of

8   the rules violation reports attached to the motion to dismiss, subject to the limitations noted

9   above.

10          Finally, defendants request that the Court take judicial notice of the docket from Los

11  Angeles County Superior Court case People v. Montogomery, No. PA036573 (exhibit C-1).

12  (ECF No. 43-2 at 4.)  This Court takes judicial notice of the docket from Los Angeles County

13  Superior Court case People v. Montogomery, No. PA036573.  See Lininger, 2017 WL 5128170,

14  at *1 n.1.

15                  2.  Plaintiff's Request for Judicial Notice

16          In his opposition, plaintiff requests that the Court take judicial notice of various

17  documents identified as:  1) plaintiff's appeal nos. 969 and 17145, including all documents

18  submitted and considered by prison officials in responding to these grievances; 2) the office of

19  appeals finding that granted plaintiff's staff misconduct complaint; 3) all appeal data that relate to

20  plaintiff's opposition; and 4) documents related to the internal investigation attached as plaintiff's

21  exhibit 7.  (ECF No. 50-2 at 1-3.)  The documents to which plaintiff refers in his request for

22  judicial notice are attached as exhibits to his opposition.  (ECF No. 50-1 at 15-80.)

23          After reviewing the documents for which plaintiff seeks judicial notice, this Court finds

24  that none of these documents are relevant to the pending motion.  In the pending motion,

25  defendants argue that the instant action is barred pursuant to Heck based on plaintiff's criminal

26  conviction in Amador County Superior Court case People v. Montogomery, No. 20-CR-29878

27  and plaintiff's prison disciplinary convictions in rules violation report nos. 7003864 and 7003865.

28  None of the documents plaintiff requests be judicially noticed demonstrate that any of these

                                                        9

1    convictions have been invalidated.  Judicial notice is inappropriate where, as here, the facts to be

2    noticed are not relevant to the disposition of the issues before the Court.  See Ruiz v. City of

3    Santa Maria, 160 F.3d 543, 548 n. 13 (9th Cir. 1998).  Accordingly, plaintiff's request for judicial

4    notice is denied.

5         This Court observes that plaintiff seeks judicial notice of a CDCR Appeal Claims

6    Decision Response in grievance no. 969 dated September 13, 2020.  (ECF No. 50-1 at 33.)  In this

7    grievance, plaintiff claimed that defendants Culum and Gamez assaulted plaintiff on June 1,

8    2020.  (Id.)  Plaintiff claimed that defendant Culum threatened plaintiff using vulgar language and

9    that plaintiff responded, resulting in defendant Culum slamming plaintiff into the wall.  (Id.)

10   Plaintiff claimed that defendants Culum and Gamez battered plaintiff while plaintiff was in

11   restraints and then fabricated the statement that plaintiff "took a swing at me."  (Id.)  The

12   institution level response to grievance no. 969 found that staff did not violate policy as to the

13   allegations/claims.  (Id.)  The CDCR Appeals Claim Decision Response states that the examiner

14   reviewed the above documents and was unable to support the institution's conclusion that staff

15   did not violate policy.  (Id.)  The CDCR Appeals Claim Decision Response found that a remedy

16   was warranted and directed the institution to take appropriate action to address all issues

17   adequately that staff used excessive force as alleged by plaintiff.  (Id.)  The CDCR Appeals Claim

18   Decision Response directed the institution to review the allegation of the threat involving profane

19   language and the allegation of fabricating statements during the emergency code announcement.

20   (Id.)

21        Plaintiff also seeks judicial notice of the institution level response to the CDCR Appeals

22   Claim Decision Response to grievance no. 969.  (Id. at 36-37.)  This response dated November 2,

23   2020 states, in relevant part, "For the allegation of verbal threats, it happened in an isolated area

24   and no additional staff or inmate were identified for interviews.  For the allegations of fabricated

25   statements, witnesses were interviewed and no policy violations were discovered.  For the

26   allegation of misuse of force no policy violations were discovered."  (Id. at 36.)  Plaintiff's

27   handwritten note on this document claims that the institution did not thoroughly investigate his

28   claims.  (Id. at 37.)

This Court observes that the CDCR Appeals Claim Decision Response and the institution level response to the CDCR Appeals Claim Decision Response to grievance no. 969 do not demonstrate that plaintiff's conviction for the rules violation related to this grievance, i.e., rules violation report No. 7003864, has been invalidated.

**C. Background**

In the motion to dismiss, defendants argue that a finding in plaintiff's favor would necessarily undermine the validity of plaintiff's rules violation convictions, nos. 7003864 and 7003865, and plaintiff's conviction in Amador County Superior Court case <u>People v. Montogomery</u>, No. 20-CR-29878. To put this argument in context, this Court next sets forth the background of plaintiff's state court and rules violation convictions.

1. <u>Case No. 20-CR-29878</u>

On August 21, 2020, the Amador County District Attorney charged plaintiff with two counts of battery on a non-confined person by a prisoner in violation of California Penal Code section 4501.5. (Def. Exhibit A-2.) Count 1 alleged that on June 1, 2020, plaintiff battered defendant Pesce. (<u>Id.</u>) Count 2 alleged that on June 1, 2020, plaintiff battered defendant Culum. (<u>Id.</u>) Plaintiff was also charged with two strike enhancements. (<u>Id.</u>) On August 16, 2024, plaintiff pleaded no contest to Count 1 in exchange for dismissing Count 2 and the strike enhancements. (Def. Exhibit A-5.) The Amador County Superior Court sentenced plaintiff to two years for Count 1, to be served consecutively to his underlying offense in Los Angeles County case no. PA036573. (Def. Exhibits A-5, A-6.)

On November 1, 2000, in Los Angeles County case no. PA036573, plaintiff was found guilty of one count of robbery, in violation of California Penal Code section 211, and one count of petty theft with a prior, in violation of California Penal Code section 666. (Def. Exhibit C-1.) Plaintiff was sentenced to 40 years to life. (<u>Id.</u>)

On the plea form signed by plaintiff in Amador County case No. 20-CR-29878, plaintiff initialed the following statement:

> I understand that the court is required to find a factual basis for my plea to make sure that I am entering a plea to the proper offenses under the facts of the case. I offer to the court the following as the

basis for my plea of no contest and any admissions:

(1) I understand that the court may consider the following as proof of the factual basis for my plea:

(a) Preliminary Hearing Transcript.

(Def. Exhibit A-5 at 4.)

Plaintiff also initialed the section of the plea form stating that his attorney would stipulate to a factual basis for the plea. (Id. at 5.) Plaintiff's attorney stipulated "that there is a factual basis for the plea," and referred the court to the preliminary hearing transcript. (Id. at 6.)

This Court next summarizes the testimony from the preliminary hearing transcript. This Court refers to the page numbers from the preliminary hearing transcript, which begin at page 147. (Def. Exhibit A-3 at p. 147.) Defendants Pesce and Culum were the only witnesses to testify at the preliminary hearing.

Defendant Pesce testified that on June 1, 2020, he observed plaintiff pacing around the dayroom yelling that plaintiff was having a mental breakdown. (Id. at p. 149.) Plaintiff seemed to be in a state of panic almost. (Id.) Defendant Pesce placed plaintiff in mechanical restraints "to get him some mental health." (Id.) After placing plaintiff in mechanical restraints, defendant Pesce called for an escort out of building two so that plaintiff could be escorted to the program office. (Id. at 150.) Once the escorting officer arrived and began escorting plaintiff to the sally port, plaintiff was still being very erratic. (Id.) Plaintiff said, "If you are going to use force on me, do it, do it." (Id.) Defendant Pesce told plaintiff to stop striking and kicking defendant Pesce. (Id.) Plaintiff stopped the escort, kicked back with his right foot and struck defendant Pesce on his left knee. (Id.) Defendant Pesce then fell, maintaining possession of plaintiff's right arm. (Id.) Defendant Pesce fell as a result of being struck by plaintiff. (Id.) As soon as defendant Pesce and plaintiff fell, responding staff grabbed plaintiff's legs and put plaintiff in leg restraints. (Id.) Defendant Pesce then left and went to get a medical evaluation done on his left knee due to the trauma. (Id.) When plaintiff fell to the ground, plaintiff was compliant and not resisting. (Id. at 159.) Defendant Pesce testified that defendants Kelly, Sargent, Culum and Gamez were present. (Id. at 151.) Defendants Gamez and Culum escorted plaintiff away in a

1    wheelchair.  (<u>Id.</u> at 161.)

2            Defendant Culum testified at the preliminary hearing that on June 1, 2020, defendant

3    Culum responded to a code one, resistive inmate, building two.  (<u>Id.</u> at 165-66.)  When defendant

4    Culum arrived, he observed an inmate in restraints on the floor.  (<u>Id.</u> at 166.)  Defendant Culum

5    did not see any force being used.  (<u>Id.</u>)  Plaintiff was not resisting.  (<u>Id.</u>)  Several officers were

6    around plaintiff.  (<u>Id.</u>)  Defendant Culum walked over to plaintiff to assist another officer place

7    ankle restraints on plaintiff.  (<u>Id.</u> at 166-67.)  Defendant Culum held plaintiff's ankles up.  (<u>Id.</u>)

8    After that a wheelchair arrived, and defendant Culum assisted plaintiff into the wheelchair with

9    defendant Gamez.  (<u>Id.</u>)  Defendants Culum and Gamez then escorted plaintiff to the alpha

10   program office.  (<u>Id.</u> at 167.)  On the way to the office, plaintiff did not speak.  (<u>Id.</u>)  When they

11   arrived at the office, defendant Culum conducted a search of the holding cell.  (<u>Id.</u>)  Defendants

12   Culum and Gamez then brought plaintiff to his feet and placed him in the holding cell.  (<u>Id.</u>)

13   Defendant Culum testified that plaintiff went into the holding cell on his own free will:  "We

14   assisted him.  To the best of my knowledge, he stood up on his own and walked into the cell."

15   (<u>Id.</u> at 173.)  Defendant Gamez then removed plaintiff's ankle restraints and handcuffs.  (<u>Id.</u>)  At

16   this time, plaintiff was facing away from defendant Culum.  (<u>Id.</u> at 167.)  Defendant Culum then

17   instructed plaintiff to remove his clothes so that defendants could perform an unclothed body

18   search.  (<u>Id.</u> at 167-68.)  Plaintiff refused to remove his clothes.  (<u>Id.</u> at 168.)  Defendant Culum

19   then put the handcuffs back on plaintiff.  (<u>Id.</u>)  Defendant Gamez then said that she was going to

20   get the scissors, which were needed to cut plaintiff's clothes off.  (<u>Id.</u>)  Plaintiff then said, "I'll

21   make you use force."  (<u>Id.</u>)  Plaintiff spun dramatically to his right and his right shoulder hit

22   defendant Culum's chest.  (<u>Id.</u>)  Defendant Culum remembers his hand coming up, plaintiff's

23   right arm hit defendant Culum's left hand, defendant Culum's left hand was on plaintiff's upper

24   back and lower neck area, and defendant Culum forced plaintiff to the ground.  (<u>Id.</u>)  Later,

25   another officer came and put leg restraints on plaintiff.  (<u>Id.</u> at 177-78.)  An officer escorted

26   plaintiff to the program office.  (<u>Id.</u> at 178.)

27            2.  <u>Rules Violation Report No. 7003864</u>

28            On August 24, 2020, plaintiff was found guilty of battery on a peace officer in violation

1    of California Code of Regulations title 15, § 3005(d)(1).  (Def. Exhibit at p. B-1.)  The charges

2    against plaintiff in this rules violation report are based on the same incident with defendant

3    Culum for which plaintiff was charged with battery on a non-confined person in Amador County

4    case no. 20-CR-29878.  At the disciplinary hearing, plaintiff made the following statement:

> As I was placed into the Holding Cell, the ankle restraints and
> handcuffs were removed and I was asked to strip out.  I did not say,
> "F" no.  I simply said I am not strip[p]ing out.  I was placed back in
> handcuffs at which time I heard Officer Gamez say, "I am going to
> get the scissors."  After her departure, C/O Culum told me, "You give
> me anymore problems, I'm going to fuck you up."  I simply stated,
> "You are not going to do nothing to me."  Culum then snatched me
> by my handcuffs and my shirt, pulled me out of the cage and
> slammed me into the wall.  He took his left leg and slammed his boot
> into my right foot.  Then he slammed me to the floor and drove his
> left knee into my back and then struck me four times on the side of
> my face with his left fist.  After that he drove his right knee about
> three or four times into the right side of my rib cage.  After that
> Officer Gamez had returned with the scissors, she drove her right
> knee knot the middle of my back and started striking me with her
> right fist into the left side of my rib.  After they finished they called
> for back up or assistance.  He cut all my cloth[e]s off with the
> scissors[,] covered me and put me back into the wheelchair and then
> they took me to medical.  I never struck with my shoulder, I never
> did, I never said I will make you use force.  Culum is a 40 year old
> Caucasian guard and I am a 57 year old African American[.]  I would
> never call a white man a nigger.  I wouldn't call a black man a nigger.
> Culum stated when I drove my shoulder he fell onto the floor and
> hurt himself but he never stated that into the incident report.

18    (Id. at 6-7.)

19            In finding plaintiff guilty, the disciplinary hearing officer cited the following section of

20    defendant Culum's report:

> After MONTOGOMERY was placed into a wheelchair Officer
> Gamez and I escorted MONTOGOMERY to Facility "A" Program
> Office.  I searched Holding Cell #2 for contraband with negative
> results.  I placed MONTOGOMERY into Holding Cell # 2.  Officer
> Gamez removed the leg restraints and handcuffs.   I gave
> MONTOGOMERY a direct order to submit to an unclothed body
> search.  MONTOGOMERY stated "Fuck no, I ain't strippin out."  I
> secured MONTOGOMERY back into handcuffs.  As Officer Gamez
> left to retrieve the scissors, MONTOGOMERY stated "I'll make you
> use force, nigga!"  MONTOGOMERY aggressively spun to his right,
> pushing his right shoulder into my chest.   I grabbed
> MONTOGOMERY'S right arm with my right hand and put my left
> hand in the center of his back.  Using my physical strength and body
> weight I forced MONTOGOMERY to the ground.  Officer Gamez
> responded and took control of MONTOGOMERY'S left side."

14

1  (Id. at 7.)

2        The disciplinary hearing officer also cited the following section of defendant Gamez's

3  report:

4            I heard inmate MONTOGOMERY yell, "I'm going to make you use
          force!" I redirected my attention towards the holding cells and

5            observed MONTOGOMERY aggressively turn to the right and strike
          Officer M. Culum in the chest with his right shoulder. Utilizing my

6            institutional radio, I summoned a code one response. I observed
          Officer M. Culum utilize Physical Force to place

7            MONTOGOMERY on the ground. Due to my vantage point I was
          unable to see the hand placement of Officer M. Culum.

8            MONTOGOMERY started to resist by thrashing his shoulders to the
          left and right and kicking his legs.

9

10  (Id.)

11        The disciplinary hearing officer also reviewed the CDCR 7219 Medical Report of Injury

12  or Unusual Occurrence on defendants Culum, Gamez and plaintiff. (Id.) The disciplinary

13  hearing officer also took into consideration plaintiff's statement made during the disciplinary

14  hearing. (Id.) This Court observes that defendant Culum's report is attached to defendants'

15  exhibit B-1. (Id. at 1.) Defendants' exhibit B-1 does not include defendant Gamez's statement or

16  the CDCR 7219 Medical Report of Injury or Unusual Occurrence forms referred to by the

17  disciplinary hearing officer. Plaintiff was assessed 150 days of credit loss after being found

18  guilty of the rules violation. (Id. at 3.)

19            3.  Rules Violation Report No. 7003865

20        On August 24, 2020, plaintiff was found guilty of battery on a peace officer in violation of

21  California Code of Regulations title 15, § 3005(d)(1). (Def. Exhibit at p. B-2.) The charges

22  against plaintiff in this rules violation report are based on the same incident with defendant Pesce

23  for which plaintiff was charged with battery on a non-confined person in Amador County case no.

24  20-CR-29878.

25        At the disciplinary hearing, plaintiff made the following statement:

26            The report is inaccurate. Pesce had confiscated personal clothing
          items[.] [W]hen I came out I requested for my clothing back. He

27            refused to return it. I then asked for a property receipt, he refused to
          issue me a property receipt. I then requested to talk to the yard

28            sergeant, he said I couldn't talk to anybody and to take it back to my

1
2
3
4
5
6
7
8

cell.  I refused and did not comply, I refused to take it back to my cell.  He placed me in handcuffs[.] [A]fter he placed me in handcuffs he tried to escort me back to my cell.  I refused to go and I sat down in the middle of the dayroom.  He called for back up.  C/O Kelly and C/O Sergent responded.  Kelly grabbed me by my left arm and Pesce grabbed me by my right arm.  They snatched me up off the floor and started dragging me towards my cell.  I planted my feet in front of me and attempt to resist them dragging me[.] [A]s I done so Kelly forcefully lifted me up and Pesce followed suit.  Kelly brought me down hard on my face taking me off balance.  My right leg went out (back) in a kicking motion causing Pesce to fall on top of me.  I was on the ground[.] Kelly put his right knee into my back and Pesce put his right knee on top of my head and they both restrained me until other officers arrived.  I was placed in leg restraints and in a wheelchair and escorted to the program office.

9       (Id. at 8-9.)

10          At the disciplinary hearing, the disciplinary hearing officer asked plaintiff if he stated,

11   "You're going to have to use force on me now."  (Id. at 9.)  Plaintiff denied making this

12   statement.  (Id.)  At the disciplinary hearing, plaintiff also called six inmate witnesses.  (Id. at 6-

13   7.)

14          In finding plaintiff guilty, the disciplinary officer cited the following section of defendant

15   Pesce's report: "Officer B. Kelly responded and grabbed MONTOGOMERY's left arm as I had

16   MONTOGOMERY'S right arm.  MONTOGOMERY continued stating, 'I'm having a mental

17   breakdown, you're going to use force on me, do it, do it.'  Simultaneously, MONTOGOMERY

18   stopped the escort and kicked back with his right leg striking my left knee causing me to fall

19   forward onto the ground."  (Id. at 7.)  The disciplinary hearing officer also cited the following

20   section of defendant Kelly's report: "I took Inmate MONTOGOMERY'S left bicep with my right

21   hand and began to escort Inmate MONTOGOMERY towards the sally port.  Inmate

22   MONTOGOMERY was shouting 'Fuck you Kelly, I'm going to make you use force.'  Inmate

23   MONTOGOMERY planted his left and right feet firmly on the ground and stopped the escort.

24   Inmate MONTOGOMERY raised his right foot off the ground and kicked backwards, striking

25   Officer M. Pesce in his left knee."  (Id.)  The disciplinary hearing officer also cited the following

26   section of defendant Sergent's report: "MONTOGOMERY lifted his right leg and kicked back

27   striking Officer M. Pesce in the left knee area."  (Id.)  The disciplinary hearing officer also cited

28   the following section of defendant Mott's report: "I opened the yard door as I observed Officer B.

16

1   Kelly secured MONTOGOMERY'S left arm as Officer Pesce secured MONTOGOMERY'S

2   right arm.  MONTOGOMERY proceeded to yell, 'I'm not going anywhere mother fucker unless

3   you use force do it now!'  As Inmate MONTOGOMERY was being escorted I observed him

4   lifting his right leg kicking Officer Pesce in the left knee." (Id.)  The disciplinary hearing officer

5   also reviewed the Investigative Employee's report, the CDCR 7219 Medical Report of Injury or

6   Unusual Occurrence on plaintiff and defendants Pesce and Kelly.  (Id.)  Plaintiff was assessed

7   150 days of credit loss.  (Id.)  This Court observes that defendant Pesce's report and the

8   Investigative Employee's report are attached to defendants' Exhibit B-2.  (Id. at 10, 14-15.)

9   Defendants' Exhibit B-2 does not contain the other documents referred to by the disciplinary

10  hearing officer.

11              **D.  Application of <u>Heck</u> to <u>People v. Montgomery</u>, No. 20-CR-29878**

12              Defendants argue that plaintiff's plea of no contest and stipulation to the facts in the

13  preliminary hearing transcript in Amador County Superior Court No. 20-CR-29878 render all of

14  plaintiff's claims <u>Heck</u> barred, including those claims related to dismissed count 2.  Defendants

15  argue that the preliminary hearing testimony reveals that plaintiff was the true aggressor and that

16  no staff members punched plaintiff or used excessive force against him.  Defendants further argue

17  that plaintiff's claim alleging that defendants denied him mental health care conflicts with the

18  stipulated facts from the preliminary hearing transcript which reveal that defendant Pesce placed

19  plaintiff in mechanical restraints in order to get plaintiff mental health care.  Defendants argues

20  that plaintiff stipulated to these facts and cannot now say that defendants were deliberately

21  indifferent to his mental health needs.  In the opposition, plaintiff argues that his no contest plea

22  to count 1, alleging battery on defendant Pesce, does not mean that his claims based on dismissed

23  count 2 involving defendant Culum are <u>Heck</u> barred.

24              As discussed above, in case No. 20-CR-29878, plaintiff pled no contest to count 1 alleging

25  battery on defendant Pesce.  In the plea form, plaintiff and his counsel stipulated to the

26  preliminary hearing transcript as the factual basis for plaintiff's no contest plea to count 1.  The

27  preliminary hearing transcript makes clear that plaintiff kicking defendant Pesce in the left knee

28  formed the factual basis of plaintiff's plea to the battery charged in count 1.  Therefore, plaintiff

1  stipulated *only* to those facts in the preliminary hearing transcript showing that plaintiff kicked

2  defendant Pesce in the left knee.  See Lemos, 40 F.4th at 1006.  For this reason, this Court does

3  not agree with defendants' argument that plaintiff's stipulation to the preliminary hearing

4  transcript as the basis for his plea to count 1 meant that plaintiff stipulated to all facts in the

5  preliminary hearing transcript, including facts involving dismissed count 2.[1]

6       Having determined the factual basis of plaintiff's no contest plea to count 1, this Court

7  next considers application of Heck to plaintiff's claims.  To put this discussion in context, this

8  Court observes that a "§ 1983 claim is not barred by Heck even when the allegedly excessive

9  force and the obstructive act that forms the basis of plaintiff's conviction occur 'in a single

10  continuous chain of events lasting a very brief time.'"  Martell, 115 F.4th at 1238 (quoting

11  Hooper v. County of San Diego, 629 F.3d 1127, 1131 (9th Cir. 2011)); see also Hooper, 629 F.3d

12  at 1129 (noting that the full encounter took place 'in a span of 45 second); Sanders, 14 F.4th at

13  971 (explaining excessive force claim can survive Heck if acts constituting excessive force

14  occurred "before or after" acts forming basis for conviction for resisting arrest, but Heck applies

15  if excessive force and acts underlying conviction occurred "at the same time."); Smith, 394 F.3d

16  at 693 (excessive force claim is not barred by Heck where excessive force takes place

17  "subsequent to the time [plaintiff] engaged in the conduct that constituted the basis for his

18  conviction").

19       For the following reasons, this Court finds that none of plaintiff's claims are Heck barred

20  based on plaintiff's Amador County criminal conviction for battery on defendant Pesce because a

21

22  [1]  This Court notes that in cases alleging excessive force where the plaintiff pled no contest to
resisting arrest and stipulated without any restriction or limitation to the preliminary hearing

23  transcript, courts have considered the entire preliminary hearing transcript to determine whether
the excessive force claims are Heck barred.  For example, in Winder v. McMahon, 345 F. Supp.

24  3d 1197 (C.D. Cal. 2018), the "defendant was charged with a single-act offense [of resisting
arrest] but there are multiple acts involved each of which could serve as the basis for a

25  conviction…" 345 F. Supp. 3d at 1206 (internal citations omitted).  "[T]his single factual
context, all of which was presented at [a] preliminary hearing and adopted by [plaintiff] as the

26  factual basis of his plea, may not be, in hindsight, subject to temporal hairsplitting [in order to
avoid the Heck bar]."  Id. at 1206-07.  The instant case is different from Winder because here,

27  plaintiff's battery conviction was based on one discrete act:  plaintiff kicking defendant Pesce in
the left knee.

28

finding in plaintiff's favor as to these claims would not necessarily imply the invalidity of this

conviction.  Plaintiff's claim that defendants Culum, Gamez and Clay used excessive force in

violation of the Eighth Amendment when they allegedly applied handcuffs tightly and

disregarded plaintiff's request to loosen the handcuffs is not Heck barred because a finding in

plaintiff's favor as to this claim would not necessarily imply the invalidity of plaintiff's battery

conviction.  Plaintiff's claim that defendants Kelly and Pesce used excessive force in violation of

the Eighth Amendment when they allegedly attempted to drag plaintiff to his cell is not Heck

barred because a finding in plaintiff's favor as to this claim would not necessarily imply the

invalidity of plaintiff's battery conviction.  A finding that defendant Kelly used excessive force in

violation of the Eighth Amendment when he allegedly slammed plaintiff's face into the concrete

is not Heck barred.  Plaintiff alleges that defendant Kelly slammed plaintiff's face into the

concrete floor as plaintiff fell after the kicking incident on which plaintiff's conviction is based.

A finding that defendant Kelly slammed plaintiff's face into the floor as plaintiff fell after

plaintiff kicked defendant Pesce in the left knee would not necessarily imply the invalidity of

plaintiff's battery conviction.  Plaintiff's claim that defendants Kelly and Pesce allegedly used

excessive force in violation of the Eighth Amendment when they used finger and wrist restraint

maneuvers to intentionally inflict pain on plaintiff is not Heck barred.  Defendants allegedly used

the finger and wrist maneuvers on plaintiff after plaintiff fell to the floor after the kicking

incident.  A finding in plaintiff's favor as to this claim would not necessarily imply the invalidity

of plaintiff's battery conviction.  Plaintiff's claim that defendant Culum used excessive force in

violation of the Eighth Amendment when he allegedly drove his full body weight down onto

plaintiff's ankles and buttocks as hard as he could, causing plaintiff severe pain, is not Heck

barred because a finding in plaintiff's favor as to this claim would not necessarily imply the

invalidity of plaintiff's battery conviction.  Plaintiff's claim that defendants Culum and Gamez

used excessive force in violation of the Eighth Amendment when they allegedly assaulted

plaintiff is not Heck barred because a finding in plaintiff's favor as to this claim would not

necessarily imply the invalidity of plaintiff's battery conviction.  Finally, plaintiff's claim that

defendants Pesce, Kelly, Sergent, Hurtado and Mott violated plaintiff's Eighth Amendment right

19

1    to adequate mental health care when they allegedly failed to provide mental health treatment to

2    plaintiff is not <u>Heck</u> barred because a finding in plaintiff's favor as to this claim would not

3    necessarily imply the invalidity of plaintiff's battery conviction. Accordingly, defendants'

4    motion to dismiss on these grounds should be denied.

5    **E. Application of <u>Heck</u> to Rules Violation Report No. 7003865**

6    Defendants argue that a finding in plaintiff's favor would directly negate plaintiff's

7    conviction in rules violation report no. 7003865. In rules violation report no. 7003865, plaintiff

8    was found guilty of battery on defendant Pesce based on the same facts on which plaintiff's

9    Amador County criminal conviction was based, i.e., plaintiff kicked defendant Pesce in the left

10   knee. "[A] disciplinary conviction for battery does not pose a <u>Heck</u> bar when the plaintiff alleges

11   "a factual scenario that would potentially allow his § 1983 claims to coexist with his prison

12   disciplinary finding." <u>Blocker v. Solis</u>, 2023 WL 10479566, at *5 (C.D. Cal. Dec. 18, 2023),

13   findings and recommendation adopted, 2024 WL 1257431 (C.D. Cal. Mar. 25, 2024) (quoting

14   <u>Brown v. Holland</u>, 2014 WL 1339687, at *4 (N.D. Cal. Mar. 28, 2014). "Such a situation exists

15   when the complaint alleges a continuous chain of events with two separate factual predicates—

16   first, acts by the prisoner leading to the rules violation and, second, acts of excessive force by the

17   officer giving rise to potential § 1983 liability." <u>Blocker</u>, 2023 WL 10479566, at *5. "By

18   contrast, when the disciplinary conviction and the excessive force claims are premised on

19   different versions of the same event, <u>Heck</u> applies." <u>Id.</u>

20   For the same reasons plaintiff's claims are not <u>Heck</u> barred by plaintiff's Amador County

21   criminal conviction, plaintiff's claims are not <u>Heck</u> barred by plaintiff's conviction in rules

22   violation report no. 7003865. A finding in plaintiff's favor as to his claims would not necessarily

23   imply the invalidity of plaintiff's disciplinary conviction in rules violation report no. 7003865.

24   Accordingly, defendants' motion to dismiss on these grounds should be denied.

25   **F. Application of <u>Heck</u> to Rules Violation Report No. 7003864**

26   Defendants argue that a finding in plaintiff's favor would directly negate plaintiff's

27   conviction in rules violation report no. 7003864. In rules violation report no. 7003864, plaintiff

28   was found guilty of battery on a peace officer based on plaintiff pushing his right shoulder into

defendant Culum's chest after defendant Culum placed plaintiff in the holding cell, i.e., the same

facts on which dismissed count 2 in Amador County case no. 20-CR-29878 was based. This

Court finds that the following claims are not <u>Heck</u> barred based on plaintiff's conviction in rules

violation report no. 7003864 because a finding in plaintiff's favor as to these claims would not

necessarily imply the invalidity of this disciplinary conviction: 1) defendants Culum, Gamez and

Clay used excessive force in violation of the Eighth Amendment when they allegedly applied

handcuffs tightly and disregarded plaintiff's request to loosen the handcuffs; 2) defendants Kelly

and Pesce used excessive force in violation of the Eighth Amendment when they allegedly

attempted to drag plaintiff to his cell; 3) defendant Kelly used excessive force in violation of the

Eighth Amendment when he allegedly slammed plaintiff's face to the concrete; 4) defendants

Kelly and Pesce used excessive force in violation of the Eighth Amendment when they allegedly

used finger and wrist maneuvers to intentionally inflict pain on plaintiff; 5) defendant Culum used

excessive force in violation of the Eighth Amendment when he allegedly drove his full body

weight down onto plaintiff's ankles and buttocks as hard as he could (this incident allegedly

occurred before defendant Culum escorted plaintiff away in a wheelchair and put plaintiff in the

holding cage); and 6) defendants Pesce, Kelly, Sergent, Hurtado and Mott allegedly failed to

provide plaintiff with mental health treatment in violation of the Eighth Amendment.

      Whether plaintiff's claim alleging that defendants Culum and Gamez used excessive force

against plaintiff after placing plaintiff in the holding cage is <u>Heck</u> barred requires further

discussion. As discussed above, plaintiff was found guilty of battery on defendant Culum based

on evidence that as defendant Gamez left to retrieve the scissors, plaintiff aggressively spun to his

right and pushed his right shoulder into defendant Culum's chest. In the amended complaint,

plaintiff alleges that after defendant Gamez went to retrieve the scissors, defendant Culum yanked

plaintiff from the cage, swung plaintiff 180 degrees, slammed plaintiff's face into the wall and

smashed the heel of his foot down into plaintiff's right foot, causing plaintiff pain. Plaintiff

alleges that defendant Culum then lifted plaintiff up off his feet and slammed plaintiff to the floor,

striking plaintiff in the face. Plaintiff alleges that defendant Gamez joined in the assault after she

returned.

This Court finds that plaintiff's claims alleging that defendant Culum yanked plaintiff out of the holding cage, swung plaintiff 180 degrees, slammed plaintiff into the wall and smashed his heel down on plaintiff's foot, are inconsistent with the findings at the disciplinary hearing that plaintiff aggressively spun to his right and pushed his right shoulder into defendant Culum's chest. These claims of excessive force and plaintiff's disciplinary conviction are premised on different versions of the same event. A finding in plaintiff's favor as to these claims would invalidate plaintiff's disciplinary conviction. Accordingly, these claims of excessive force are Heck barred.

Plaintiff alleges that defendant Culum used excessive force against plaintiff after the incident for which plaintiff was convicted of battery. Plaintiff alleges that defendant Culum lifted plaintiff up off his feet and slammed plaintiff to the floor, striking plaintiff in the face. A finding in plaintiff's favor as to these claims would not necessarily invalidate plaintiff's rules violation conviction for battery on defendant Culum. Accordingly, these claims are not Heck barred. Plaintiff's claim alleging that defendant Gamez used excessive force when she joined defendant Culum in assaulting plaintiff is also not Heck barred as a finding in plaintiff's favor as to this claim would not necessarily invalidate plaintiff's rules violation conviction for battery on defendant Culum.

Accordingly, this Court recommends granting defendants' motion to dismiss plaintiff's claims alleging that defendant Culum used excessive force when he yanked plaintiff out of the holding cage, swung plaintiff 180 degrees, slammed plaintiff into the wall and smashed his heel down on plaintiff's foot as Heck barred based on plaintiff's disciplinary conviction in rules violation report No. 7003864. The Court recommends denying defendants' motion to dismiss plaintiff's remaining claims as Heck barred based on plaintiff's disciplinary conviction in rules violation report No. 7003864.

**VI. CONCLUSION**

Accordingly, IT IS HEREBY ORDERED that plaintiff's motion for an extension of time to file his opposition to defendants' motion to dismiss (ECF No. 49) is **granted**; and

IT IS HEREBY RECOMMENDED that defendants' motion to dismiss (ECF No. 43) be

1  **granted** as to plaintiff's claim alleging that defendant Culum used excessive force when he

2  yanked plaintiff out of the holding cage, swung plaintiff 180 degrees, slammed plaintiff into the

3  wall and smashed his heel down on plaintiff's foot; defendants' motion to dismiss be **denied** in

4  all other respects.

5      These findings and recommendations are submitted to the United States District Judge

6  assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days

7  after being served with these findings and recommendations, any party may file written

8  objections with the court and serve a copy on all parties.  Such a document should be captioned

9  "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the

10 objections shall be filed and served within fourteen days after service of the objections.  The

11 parties are advised that failure to file objections within the specified time may waive the right to

12 appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

13

14 Dated:  June 11, 2025

15 _____

16 CHI SOO KIM
   UNITED STATES MAGISTRATE JUDGE

17

18

19

20

21

22

23 Mont1156.mtd(2)/2

24

25

26

27

28